Filed 1/15/14  In re Theodore F. CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re THEODORE F. et al., Persons Coming Under the Juvenile Court Law. | B249871 (Los Angeles County Super. Ct. No. CK97276) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. JAKE F., Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County.  Timothy R. Saito, Judge.  Affirmed in part and reversed in part.

John L. Dodd, under appointment by the Court of Appeal, for Defendant and Appellant.

John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel, and Kimberly Roura, Deputy County Counsel, for Plaintiff and Respondent.

_____

In this dependency matter, we conclude there is sufficient evidence to support the juvenile court's orders adjudging six-year-old Theodore F. and two-year-old Sophia F. dependents of the court pursuant to Welfare and Institutions Code section 300, subdivision (b) (failure to protect).[1]  But we agree with Jake F. (Father) that the court erred in applying section 361, subdivision (c)(1).  We reverse the findings and dispositional order removing the minors from Father's custody and affirm the jurisdictional and dispositional findings and orders in all other respects.  Mother is not a party to this appeal.

## BACKGROUND

On December 24, 2012, the minors came to the attention of the Department of Children and Family Services (DCFS) when it received a referral that on December 21, 2012, Mother, Father, and maternal grandmother hit and pushed each other in the presence of the minors.  The caller stated that Mother has a history of alcohol abuse, is an "angry drunk," and five years previously had been observed carrying Theodore while under the influence.

On January 11, 2013, DCFS filed a section 300 petition on behalf of the minors. Paragraph b-1 of the petition concerned altercations between Father and Mother on December 21, 2012, and earlier.  As sustained, it alleged under section 300, subdivision (b) that Mother and Father have a history of engaging in physical altercations in the presence of the minors.  On prior occasions, Father pushed Mother, causing her to hit her head on a wall.  On December 21, 2012, Father pushed Mother, causing her to fall to the floor in Sophia's presence.  While the original petition alleged that Mother endangered the minors' physical health and safety, it was amended to allege only that Father's conduct endangered the minors, ultimately stating in paragraph b-1 of the petition that "Mother was unable to protect the child due to the physical altercation by . . . Father against . . . Mother.  And Mother's inability to protect endangers the children's physical

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

2

and emotional health and safety and places the children at risk of physical harm, damage, and danger."

Paragraph b-2 of the petition concerned Father's altercation with the minors' maternal grandmother, which occurred concurrently with the December 21 altercation between Father and Mother. As sustained, paragraph b-2 alleged under section 300, subdivision (b) that Mother, Father, and maternal grandmother engaged in a physical altercation in the presence of the minors. While holding Sophia, Father pushed maternal grandmother, who struck her back against the counter, requiring emergency medical services. Father kicked maternal grandmother's leg. Maternal grandmother struck Father with a shoe, pushed Father, and threatened to kill Father. Such physical conduct on the part of Father against maternal grandmother endangers the minors' physical health and safety and places the minors at risk of physical harm, damage, and danger. Other allegations made pursuant to section 300, subdivisions (a) and (b) were dismissed.

Mother's and Father's versions of what had occurred differed substantially. We summarize Mother's version and the testimony of witnesses supporting her version first, since that evidence will be the basis of our review for substantial evidence supporting the juvenile court's order.

Mother reported the following to DCFS. Father and Mother were separated but still married. Neither had filed for divorce. The minors lived with Mother and maternal grandmother. On December 21, 2012, Mother, Father, and maternal grandmother engaged in a physical altercation when Father visited the home without being invited. Mother saw Father kick maternal grandmother. While Father was holding Sophia, Mother asked Father to leave because she wanted his visits to be conducted in a public place. Father yelled and cursed at Mother and maternal grandmother. Father then pushed Mother to the floor while he was still holding Sophia. Mother grabbed Sophia, ran outside, and screamed for help. Mother called the police after she went back into the house. After Mother put the minors into a bedroom, she asked Father to leave, but when he did not, she hit him on the foot with a frying pan to get him to leave the house.

Mother also reported that the following incidents of verbal and physical abuse occurred before the December 21, 2012 incident.  On December 31, 2007, while Theodore was asleep, Father had pushed her hard, making her hit her head against a wall.  In the summer of 2011, while the family lived in Peru, Father became angry and yelled and cursed at her when she confronted him about his drug use and gambling and asked him to help her care for the minors.  Mother stated that when she attempted to hose Father's belongings with water, "'he shoved me really hard and I fell and hit my head on the floor.'"  Mother separated from Father and returned to the United States with the minors.  Later, Father returned to the United States.  On December 8, 2012, Father cursed at her in the presence of Theodore because she refused to allow him to take Theodore out of the home.

Maternal grandmother reported that during the incident on December 21, 2012, Father kicked her in the leg.  When maternal grandmother tried to grab Sophia from Father's arms and push him out of the house, Father shoved her, causing her to fall back onto the edge of the counter.  Maternal grandmother was treated at the emergency room for her injuries.

Theodore told DCFS that Mother called the police "'because they were fighting and daddy almost killed nana.'"  Theodore stated that Father had pushed maternal grandmother with his feet and hit her in the stomach with his fist.  He denied seeing Mother or maternal grandmother hit Father.  He also reported that maternal grandmother tried to hit Father on the back of the head with a shoe, but he ducked.  Father wanted to take Theodore to the park, but Theodore did not want to go because he was scared "of the fighting."

Mother testified at the jurisdictional hearing that she had been unaware that Father intended to visit on December 21, 2012.  When she asked him to leave he became very upset and started cursing at her.  He pushed Mother onto the floor while he was holding Sophia.  When Father began to argue with maternal grandmother, Mother grabbed Sophia, ran outside, and asked the neighbors to call police.  Mother testified that she was seeking a restraining order because she was afraid that Father would take the minors to

4

South America and that he might physically harm Mother. Mother also testified that Father had pushed her in 2007 and 2011.

Neighbor Theresa Estes testified at the jurisdictional hearing that around December 8, 2012, she heard Father cursing at Mother. When Mother sought Estes's help, Estes told her that it would be futile to resolve the matter with Father because he "was not showing goodwill." On December 21, 2012, after Estes heard fighting sounds and Mother screaming "'help me, help me,'" she called 911 and security because she was concerned about the physical well-being of Mother and the minors. Estes testified that the previous dozen visits by Father had been "unremarkable" but the December 8 and December 21, 2012 visits were "openly contentious."

As noted above, Father's version was quite different. Father reported to DCFS that a few days prior to the December 21, 2012 visit, he had visited the minors and informed Mother that he would return to visit again. At the beginning of the December 21, 2012 visit, Mother smiled at him when he was watching television with Theodore in the minor's upstairs bedroom room. After he went downstairs and picked up Sophia, Mother complained about Father's presence in the home and maternal grandmother began yelling at him and grabbing Sophia. While he was holding Sophia, maternal grandmother started hitting him with a shoe and Mother jumped on his back while he was trying to call the police. Father pushed maternal grandmother, who fell on the floor. Maternal grandmother then hit Father with a strainer, scratching his neck. Father pushed maternal grandmother to the floor. Maternal grandmother said to Father, "'[I]f I had a knife, I'd stab you in the heart.'"

Father told DCFS that on a previous occasion Mother had hit and kicked him while she was drunk. At the time, she was holding Theodore and staggering around the house. On another occasion, he had to kick Mother to protect Theodore, whom he was holding. Yet another time, Father threw Mother to the ground after she physically attacked him.

Father testified at the jurisdictional hearing that he had informed maternal grandmother that he was going to visit on December 21, 2012. Theodore let him into the

house and asked Father to take him to the park. As he was holding Sophia, Mother approached him and said she wanted his visits to be "somewhere else." Maternal grandmother then grabbed Sophia and Father pushed maternal grandmother. Maternal grandmother started hitting him with a shoe while he was holding Sophia, and he pushed her again, at which point maternal grandmother fell on the floor. Mother and maternal grandmother then began "jumping" Father, so he took Sophia into the bedroom, called 911, put Sophia down, and gave Mother a "light shove" onto the bed. Maternal grandmother said to Father, "'I'm going to kill you, I'll have you beat up.'" Maternal grandmother grabbed a utensil and struck Father on his throat.

On March 5, 2013, the juvenile court sustained the petition as amended and issued a permanent restraining order on the same terms as a previous temporary restraining requested by Mother, ordering Father to stay away from Mother and the minors except for supervised visitation by a DCFS-approved monitor three times per week, three hours per visit.

With respect to paragraph b-1 of the section 300, subdivision (b) allegation, the juvenile court stated, "This count is supported by testimony of the parties, including Mother and Father and the witness, neighbor Miss Estes. Mother and Father engaged in physical tussles when the child was present. Mother did take measures to call the police in this case and the neighbor for help, which does . . . substantiate some of her claims in this case. I found Miss Estes to be credible. [¶] . . . [¶] Father has admitted to pushing . . . Mother on several prior occasions, as he did on this occasion as well, regarding a kitchen utensil. Although mother appeared to have such a utensil in her hands during that incident, both Mother and Father have testified that it was not used in this case." With respect to paragraph b-2 of the section 300, subdivision (b) allegation, the court stated, "Court finds this case was more involved . . . necessitating grandmother to have been taken to the hospital, supported by the child's statements, law enforcement accounts, statements by Father and grandmother, as well as . . . Mother, regarding the incident."

Father testified at the disposition hearing held on April 14, 2013. Following argument, the juvenile court declared the minors dependents of the court under section

6

300, subdivision (b); removed the minors from Father's custody pursuant to section 361, subdivision (c); ordered the minors to live with Mother; ordered random drug testing, domestic violence, and individual counseling for Mother and Father; ordered conjoint counseling with Theodore for Mother and Father; ordered anger management classes for Father; and ordered monitored visitation by a DCFS-approved monitor for Father. Father appealed.

## DISCUSSION

**A. Standard of review**

The juvenile court's jurisdictional finding that the minor is a person described in section 300 must be supported by a preponderance of the evidence. (§ 355; Cal. Rules of Court, rule 5.684(f).) "'""When the sufficiency of the evidence to support a finding or order is challenged on appeal, the reviewing court must determine if there is any substantial evidence, that is, evidence which is reasonable, credible, and of solid value to support the conclusion of the trier of fact. [Citation.] In making this determination, all conflicts [in the evidence and in reasonable inferences from the evidence] are to be resolved in favor of the prevailing party, and issues of fact and credibility are questions for the trier of fact. [Citation.]"'" [Citation.] While substantial evidence may consist of inferences, such inferences must rest on the evidence; inferences that are the result of speculation or conjecture cannot support a finding. [Citation.]" (*In re Precious D.* (2010) 189 Cal.App.4th 1251, 1258–1259.) "[W]e must accept the evidence most favorable to the order as true and discard the unfavorable evidence as not having sufficient verity to be accepted by the trier of fact. [Citation.]" (*In re Casey D.* (1999) 70 Cal.App.4th 38, 53.)

**B. Substantial evidence supports the juvenile court's jurisdictional findings and orders under section 300, subdivision (b)**

Father contends the evidence is insufficient to support the juvenile court's jurisdictional findings under section 300, subdivisions (b). We disagree.

Section 300, subdivision (b) provides a basis for juvenile court jurisdiction if "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious

7

physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child."

"A jurisdictional finding under section 300, subdivision (b) requires: '"(1) neglectful conduct by the parent in one of the specified forms; (2) causation; and (3) 'serious physical harm or illness' to the child, or a 'substantial risk' of such harm or illness." [Citation.]' [Citations.] The third element 'effectively requires a showing that at the time of the jurisdictional hearing the child is at substantial risk of serious physical harm in the future (e.g., evidence showing a substantial risk that past physical harm will reoccur).' [Citation.]" (*In re James R.* (2009) 176 Cal.App.4th 129, 135.) "[T]he use of the disjunctive 'or' demonstrates that a showing of prior abuse and harm is sufficient, standing alone, to establish dependency jurisdiction." (*In re J.K.* (2009) 174 Cal.App.4th 1426, 1434–1435, fn. omitted.) Thus, jurisdiction may be exercised "either based on a prior incident of harm or a current or future risk." (*Id.* at p. 1435, fn. 5.)

As stated, we "must accept the evidence most favorable to the order as true and discard the unfavorable evidence as not having sufficient verity to be accepted by the trier of fact." (*In re Casey D.*, *supra*, 70 Cal.App.4th at p. 53.) Thus, viewing all conflicts in favor of DCFS and drawing all reasonable inferences in support of the judgment, as we must (*In re Veronica G.* (2007) 157 Cal.App.4th 179, 185), we conclude that substantial evidence supports the juvenile court's findings that the minors were described by section 300, subdivision (b).

In sustaining paragraph b-1 of the petition, the juvenile court held that its allegations were true. Thus, our inquiry is whether there was substantial evidence to support that determination. There is. The evidence shows that, according to Mother, in 2007 Father pushed her hard, making her hit her head against the wall. In the summer of 2011, Father became angry and yelled and cursed at her when she confronted him about his drug use and gambling and asked him to help her care for the minors. He shoved her, causing her to fall and hit her head on the floor. Mother stated that during the most recent incident on December 21, 2012, Father pushed her to the floor while he was holding Sophia.

8

Similarly, in sustaining paragraph b-2 of the petition, the juvenile court held that its allegations were true. Thus, the inquiry again is whether there was substantial evidence to support that determination. It is undisputed that on that date Mother, Father, and maternal grandmother engaged in a physical altercation in the presence of both minors. While holding Sophia, Father pushed maternal grandmother, who struck her back against the counter and required emergency medical treatment; Father kicked maternal grandmother's leg; and maternal grandmother struck father with a shoe. Father agrees that he was holding Sophia when maternal grandmother struck him with a shoe and tried to pull the two-year-old away from him while he held on to her. Father admitted that he had pushed maternal grandmother several times during the altercation. According to Father, maternal grandmother pushed him and stated that if she had a knife she would kill him. The evidence was sufficient to constitute substantial evidence supporting the juvenile court's order.

Here it also appears the juvenile court could find the "substantial risk" of "serious physical harm" required under subdivision (b) of section 300. During the December 21 altercation, it appears undisputed that when maternal grandmother tried to grab Sophia away by pulling on her arm, Father resisted, risking damage to the two-year-old's arm or shoulder. The little girl also was at risk of being hit in the head or face by grandmother's shoe or a kitchen implement, or Sophia could have been jostled to the ground by grandmother's or Father's pushing. Similarly, Theodore was underfoot when Father was kicking maternal grandmother and Mother and grandmother were falling to the floor close to him. Theodore could have been seriously hurt by a badly aimed kick or a falling adult body.

Because Father failed to protect the minors from the substantial risk of encountering the violence and suffering serious physical harm, we conclude the evidence supported the section 300, subdivision (b) allegations.

Father cites *In re Daisy H.* (2011) 192 Cal.App.4th 713 in support of his argument that, because "the parents no longer lived together, and both had an understanding of [F]ather's visitation rights . . . , there was no concern of any further incidents [and] there

9

was no substantial evidence supporting jurisdiction." Father's reliance on *Daisy H.* is misplaced.

In *In re Daisy H.* we reversed the juvenile court's jurisdictional and dispositional orders declaring the minors dependents of the court and removing them from their father's custody. (*In re Daisy H.*, *supra*, 192 Cal.App.4th at p. 715.) *In re Daisy H.* concerned a single incident of physical abuse of the mother by the father years before the section 300 petition was filed. (*Id.* at p. 717) With respect to the section 300, subdivision (b) allegations, we concluded that "[t]he evidence was insufficient to support a finding that past or present domestic violence between the parents placed the children at a current substantial risk of physical harm" because the incident had occurred "at least two, and probably seven, years before the DCFS filed the petition"; the incident occurred out of the presence of the minors, who were healthy, well groomed, and did not show any signs of abuse; there was no evidence of ongoing violence between the parents, who were currently separated; and the minors denied that they had ever witnessed the father physically abuse the mother. (*Ibid.*)

*In re Daisy H.* is distinguishable on a variety of grounds, including that there was only one incident in *In re Daisy H.* compared to several here; and the incident in *In re Daisy H.* occurred years earlier, while in this case there was a very recent incident in December 2012 and at least one more in 2011. The minors were present during the altercations here, whereas the minors in *Daisy H.* were not. Finally, the remoteness of the incident in *Daisy H.* did not indicate a "current substantial risk of physical harm," while the incident here that occurred in December 2012 indicates that the relationship among Mother, Father, and maternal grandmother had become so toxic that it is reasonable to conclude that they are likely to become violent whenever the three are together again.

*In re Heather A.* (1996) 52 Cal.App.4th 183 is more on point. There, the Court of Appeal concluded there was sufficient evidence to support the juvenile court's jurisdictional finding under section 300, subdivision (b) where there was evidence of continuing violence between the mother and the father. The mother testified she had

been physically abused by the father on eight occasions, four or five of which had occurred when the minors were present in the home. (*Id*. at p. 188.) On one occasion in the presence of the minors, the father had pushed the mother on the floor and hit her. Another time, after the father smashed a glass vase, one of the minors cut her foot. On yet another occasion, the minors were elsewhere in the house when the father hit the mother, but the minors came to see what was happening when they heard noises. (*Ibid*.) The Court of Appeal noted that "the children were put in a position of physical danger from this violence, since, for example, they could wander into the room where it was occurring and be accidentally hit by a thrown object, by a fist, arm, foot or leg, or by [the mother] falling against them." (*Id*. at p. 194.) The court concluded, "It is clear to this court that domestic violence in the same household where children are living *is* neglect; it is a failure to protect [the minors] from the substantial risk of encountering the violence and suffering serious physical harm or illness from it. Such neglect *causes* the risk." (*Ibid*.) This case is more like *In re Heather A*. because, as stated, there was evidence of continuing and escalating violence among Mother, Father, and maternal grandmother in the presence of the minors, who could have been injured.

We are not persuaded by Father's citation to *In re Rocco M.* (1991) 1 Cal.App.4th 814, 824, for the proposition there was no substantial evidence of a "current risk" of harm. Here, we perceive a current risk of harm to the children whenever Mother and Father are together, given their current volatile relationship.

Father also contends that the juvenile court should have dismissed the petition and sent the matter to family law court, which "could issue appropriate visitation and custody orders." As discussed, the evidence supports the court's jurisdictional findings, and we reject Father's arguments that other measures—in particular, family law orders where no divorce proceedings have yet been initiated—are sufficient to protect the minors.

Further, Father contends that because only physical harm was pleaded in the original allegations of paragraph b-1 of the petition under section 300, subdivision (b), the juvenile court's passing reference to the minors' emotional health tainted its jurisdictional findings. We disagree. The original petition alleged in paragraph b-1

11

under section 300, subdivision (b) that Mother and Father's violent conduct endangers the minors' *physical* health and safety and places them at risk of *physical* harm, damage, and danger. As we explain, we conclude that the juvenile court's finding that "Mother's inability to protect endangers the children's physical *and emotional health* and safety" did not convert the count into an allegation under section 300, subdivision (c) based on emotional harm.

The juvenile court did not rely upon subdivision (c) in making it findings. It referred only to the section 300, subdivision (b) allegations. The court stated that the allegations in paragraph b-1 under section 300, subdivision (b) were supported by the evidence in the record and the testimony of Mother, Father, and Estes. Specifically, it noted that "Mother and Father engaged in *physical* tussles when the child was present. Mother did take measures to call the police in this case and the neighbor for help, which does . . . substantiate some of her claims in this case. I found Miss Estes to be credible. [¶] . . . [¶] Father has admitted to pushing . . . Mother on several prior occasions, as he did on this occasion as well . . . ." (Italics added.)

While inclusion of the phrase "emotional health" may have been inadvertent on the part of the court, any error was harmless because, as discussed, we conclude that substantial evidence supports the juvenile court's jurisdictional finding with respect to the allegations of "substantial risk" of "serious physical harm" in paragraph b-1 under section 300, subdivision (b). (*In re Abram L.* (2013) 219 Cal.App.4th 452, 463 [juvenile court's order cannot be reversed unless its error was prejudicial].)

In addition, "The reviewing court may affirm a juvenile court judgment if the evidence supports the decision on any one of several grounds." (*In re Jonathan B.* (1992) 5 Cal.App.4th 873, 875.) In *In re Jonathan B.*, the appellate court held, "'Since the trial court had sufficient basis to terminate appellant's parental rights under [Civil Code] section 232, subdivision (a)(6), its findings under subdivision (a)(7) are moot.' [Citation.]" (*Jonathan B.*, at p. 875.) Here, because sufficient evidence supported the allegations in paragraph b-2 under section 300, subdivision (b), jurisdiction over the minors was properly asserted.

We note that the mix of Father, Mother, and maternal grandmother contributes to a volatile combination harmful to the minors. Assertion of jurisdiction will protect the minors, whereas their parents cannot. We conclude that substantial evidence supports the juvenile court's jurisdictional findings and orders under section 300, subdivision (b).

**C. The juvenile court erred in removing the minors from Father under section 361, subdivision (c)(1)**

Father contends that the juvenile court did not have authority under section 361, subdivision (c)(1) to remove the minors from him. We agree.

After the juvenile court adjudges a minor a dependent of the court, "it 'may limit the control to be exercised over the dependent child by any parent' and shall clearly specify those limitations in its orders. (§ 361, subd. (a).)" (*In re Damonte A*. (1997) 57 Cal.App.4th 894, 898.) But the minor may not be removed from the physical custody of the parents unless "[t]here is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's or guardian's physical custody." (§ 361, subd. (c)(1).)

"The dependency statutory framework distinguishes between a parent with whom the child was residing at the time the section 300 petition was initiated (custodial parent), and a parent with whom the child was not residing at the time the events or conditions arose that brought the child within the provisions of section 300 (noncustodial parent). (§§ 361, subd. (c), 361.2, subd. (a).) Section 361, subdivision (c) governs the child's removal from the physical custody of a parent. '"It does not, by its terms, encompass the situation of the noncustodial parent."' [Citation.]" (*In re V.F.* (2007) 157 Cal.App.4th 962, 969, fns. omitted, superseded on other grounds as stated in *In re Adrianna P.* (2008) 166 Cal.App.4th 44, 57–58.)

Thus, the juvenile court could not remove the minors from Father's custody under section 361, subdivision (c)(1) because they were not residing with him when the petition was initiated. (See *In re Abram L.*, *supra*, 219 Cal.App.4th at p. 461 [minors, who did

13

not reside with the father at the time the petition was initiated, could not be removed from the father's physical custody under section 361, subdivision (c)(1)].) Nor did Father request custody of the minors under section 361.2, subdivision (a), under which the trial court must determine whether placement with that parent would be detrimental if a noncustodial parent requests custody of a child.

"'[A] superior court convened as and exercising the special powers of a juvenile court is vested with jurisdiction to make only those limited determinations authorized by the legislative grant of those special powers.' [Citations.]" (*In re Jody R.* (1990) 218 Cal.App.3d 1615, 1622–1623). Thus, "Even when a court has jurisdiction over the subject matter and the parties in a fundamental sense, it may have no 'jurisdiction' or power to make orders which are not authorized by statute." (*Id*. at p. 1622 [order joining live-in companion as party to dependency not authorized by statute, voided and reversed].)

Accordingly, we conclude that the juvenile court erred in applying section 361, subdivision (c)(1) to purport to remove the minors from the noncustodial parent.

In light of our conclusion, we need not determine whether the court's removal order was supported by substantial evidence or whether there are reasonable means that could be employed to protect the minors, such as having the turnover between the parents occur at a police station. Therefore, we reverse the order. (*In re Damonte A*., *supra*, 57 Cal.App.4th at p. 900 [where removal order not authorized by statute, appellate court reversed disposition orders and did not need to address whether substantial evidence supported predicate findings for removal].)

**DISPOSITION**

The juvenile court's findings and dispositional orders made pursuant to Welfare and Institutions Code section 361, subdivision (c)(1), removing the minors from the physical custody of Father are reversed.  In all other respects, the jurisdictional and dispositional findings and orders are affirmed.

NOT TO BE PUBLISHED.


MILLER, J.*

We concur:


CHANEY, Acting P. J.


JOHNSON, J.

---

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.