Filed 4/21/14  In re U.S. CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re U.S. et al., Persons Coming Under the Juvenile Court Law. | B247521 (Los Angeles County Super. Ct. No. CK97024) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> LUIS S. et al., <br><br> Defendants and Appellants. | |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> LUIS S., <br><br> Defendant and Appellant. | B251457 (Los Angeles County Super. Ct. No. CK97024) |

APPEAL from a judgment and order of the Superior Court of Los Angeles County, Philip L. Soto, Juvenile Court Referee. Affirmed.

Joseph T. Tavano, under appointment by the Court of Appeal, for Defendant and Appellant Luis S. (Father).

Janice Anita Jenkins, under appointment by the Court of Appeal, for Defendant and Appellant L.S. (Mother).

John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel, and Jessica S. Mitchell, Senior Associate County Counsel, for Plaintiff and Respondent.

_____

Appellants Luis S. (Father) and L.S. (Mother) are the parents of U.S. (born March 2005), Josue S. (born 1997) and Noemi S. (born April 2008). Father and Mother each filed appeals from the January 2013 jurisdictional findings of the juvenile court in case No. B247521. While the appeal was pending, Father filed an appeal from an August 27, 2013 order maintaining jurisdiction (case No. B251457). On January 23, 2013, we ordered the cases may be considered concurrently for purposes of oral argument and decision.

FACTUAL & PROCEDURAL BACKGROUND

*The sexual abuse allegations*

In 2009, Mother discovered Josue (then 12 years old) forcing U.S. (then 4 years old) to orally copulate him. U.S. reported the behavior had occurred several times thereafter. At the time Josue and U.S. shared a bedroom. The incident was reported to the Department of Children and Family Services (the Department), but no petition was filed. A juvenile petition was filed against Josue pursuant to Welfare and Institutions Code section 602[1] and Josue was placed on probation beginning in February 2010. Josue

_____

[1] All subsequent undesignated statutory references shall be to the Welfare and Institutions Code.

2

moved into his grandmother's home. Josue was assessed by a psychiatrist and diagnosed with ADHD issues. Josue attended therapy and Mother and Father also participated in a voluntary support group for a two-year period. Josue did not complete sex offender counseling within the required time due to his learning disabilities, but had covered nearly all of the material and was continuing with therapy.

*The driving incident*

In November 2012, Father decided to teach Josue, then 15 years old, how to drive the car.[2] Mother was home with U.S. and Noemi, standing in the driveway. Josue almost hit Mother's car and ended up pinning U.S. to a post. Mother and Father did not call 9-1-1 but took U.S. to the hospital. The hospital social worker interviewed all the family members. U.S. sustained a fractured femur and pelvis. He required surgery and a rod was put in his leg. He was placed in a leg cast and given an immobilizer and a walker.

Later Los Angeles Police Detective Chris Laurino called the social worker because Father refused to let him interview the family. The social worker and police officers went to the home. Father did not want to speak to them until he had contacted his attorney, but allowed them to assess the home for safety concerns. The attorney gave Father permission to speak to the social worker and Father agreed to an interview. He would only allow the children to speak to the social worker in his presence. Father said Josue has never met his probation officer.

Detective Laurino voiced his concerns to the social worker that Josue may have attempted to run over U.S. based on the damage to the car and sidewalk. Detective Laurino voiced grave concerns about the safety of U.S. in the family home.

A new social worker interviewed the school counselor, the school psychologist, the hospital social worker and Josue's probation officer. The school counselor Lovell

---

[2]     Apparently by this time Josue had moved back into the home, but the record does not indicate when this occurred.

3

stated that, "Josue is very dishonest and a lot of it is coming from the parents. I think the dad is asking him to lie a lot. Dad has been very intimidating."

The psychologist said Josue had not ever blatantly lied but confirmed that Father had unrealistic expectations of Josue and was aggressive and controlling. She said, "Josue is very passive aggressive and controls his life that way. He failed at school on purpose to get back at the parents. It's the perfect storm for him. The parents blame the school. They try to catch us doing something wrong. They are extremely critical. His homework and his projects that are to be done at home are never done. Yet they blame the school. Then the parents say he is disabled and no one is helping."

The probation officer stated that contrary to Father's reports, she had met with Josue once a month for the past two years.

The hospital social worker said that she had serious concerns about the family. Father did not want to talk to her when he brought Josue to the hospital. When she told him she was going to report the case to the Department he said he did not want them notified. When she told him she was going to make the call, he said he would report it himself. She said the nurses told her that Father told them two different stories, and told the doctor something else. She said: "There are red flags everywhere."

On or about November 5, 2012, U.S. was home using a walker when he fell.

Father only reluctantly allowed the social worker to interview the children privately in December 2012. Josue said he did not want to drive the car but his father told him to.

Noemi confirmed that Josue was driving and Father was in the car with him. U.S. said he thought Josue might have either panicked or hit him on purpose because "he doesn't like me." In a subsequent interview, U.S. said he did not believe Josue intentionally hit him.

*The Petition*

The Department filed a petition on December 19, 2012, pursuant to section 300, subdivisions (b), (d), and (j). At a jurisdictional and dispositional hearing on January 29,

4

2013, the juvenile court sustained the petition pursuant to subdivisions (b) and (d) after striking some language from the petition.[3]

In the dispositional phase of the hearing the court indicated it had some concerns about whether the parents would address what it called "very serious conduct." It had reservations about placing Josue back in the home because of the risk to U.S. and Noemi. It agreed to release the younger children to the family home with family maintenance services and individual counseling, with the Department to have the discretion to allow Josue to move back into the home when appropriate. It stated: "This was a very disturbing case for me when I read it. The car incident was bad enough. . . . But the sexual aspects were even more disturbing when I read it, and that's why I needed that additional last-minute information. You folks have to make sure that something like this is not going to happen again. When you are able to do that, then I'll be able to close this case out but not until then. We'll see how everything is going and how the therapy is going with both of your children that are in therapy. We'll then make appropriate findings and orders at the next hearing about that. . . ."

The matter was continued until May 28, 2013.

Mother and Father appealed, contending the evidence was insufficient to support the jurisdictional findings that U.S. and Noemi were currently at risk of physical harm or sexual abuse pursuant to section 300, subdivisions (b) and (d).[4]

*Second Appeal*

While the matter (case No. B247521) was pending on appeal, another hearing was held on May 28, 2013 for a status review. The court found continued jurisdiction was necessary and continued the matter for three months to ensure there were no further incidents justifying jurisdiction. At the six-month review hearing on August 27, 2013,

---

[3] At the hearing, the court struck the subdivision (j) count. The minute order erroneously indicates the court sustained that count.

[4] Father appealed the findings as to subdivision (j), but the court did not sustain findings as to that subdivision.

5

the court found that because the children resided with the parents, there did not seem to be any risk issues but because the appeal in case No. B247521 was pending, it retained jurisdiction.

Father then filed an appeal from the August 27th order retaining jurisdiction (case No. B251457). The Department filed a letter brief stating that it takes no position as to Father's challenge to the order maintaining jurisdiction.

At a hearing scheduled for February 25, 2014, the court continued the matter until May 27, 2014 for review on the pending appeal.

*DISCUSSION*

*1. The jurisdictional order*

The Department must show by a preponderance of evidence that the juvenile court has jurisdiction. (*In re Veronica G.* (2007) 157 Cal.App.4th 179, 185.) On appeal, we review the jurisdictional findings for substantial evidence. (*In re B.T.* (2011) 193 Cal.App.4th 685, 691; *In re David M.* (2005) 134 Cal.App.4th 822, 828.) We defer to the juvenile court on all issues of credibility (*In re Savannah M.* (2005) 131 Cal.App.4th 1387, 1393) and resolve all conflicts and draw all reasonable inferences in support of the judgment. (*In re Veronica G., supra,* 157 Cal.App.4th at p. 185.) Substantial evidence must be reasonable, credible and of solid value. A mere scintilla of evidence is not enough. (*In re B.T., supra,* 193 Cal.App.4th at p. 691.) The ultimate test is whether it is reasonable for a trier of fact to make the ruling in question in light of the whole record. (*In re Savannah M., supra*, 131 Cal.App.4th at pp. 1393-1394.)

Subdivision (b) of section 300 authorizes dependency jurisdiction where "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent . . . to adequately supervise or protect the child. . . ." Subdivision (d) provides for jurisdiction when "[t]he child has been sexually abused, or there is a substantial risk that the child will be sexually abused by . . . a member of his or her household, or the parent or guardian has failed to adequately protect the child from sexual abuse when the parent or guardian knew or reasonably should have known that the child was in danger of sexual abuse."

Father and Mother contend that there was insufficient evidence to support either the sexual abuse or the physical abuse counts. In their briefs they state that both counts resulted from one-time isolated incidents.

Depending on the facts of each case, one incident may or may not be sufficient to uphold an allegation of risk of future harm. Past conduct is relevant, but the totality of the circumstances must be considered. There must be some reason beyond mere speculation that the harmful incident will reoccur or that the minors are at substantial risk of harm. (*In re David M., supra,* 134 Cal.App.4th 822, 831-832.)

As far as the driving incident, Father did not call 9-1-1 and would not let the children speak with the police or social workers until after he contacted an attorney. Hospital personnel noticed Father seemed more interested in coaching Josue than attending to the injured U.S. As for Mother, although she was present, she did not try to stop Father from letting Josue drive.

With respect to the sexual abuse, U.S. reported that after Mother learned of the first incident, there were other incidents of abuse and for a time he remained in the same bedroom as Josue. Neither parent appeared to be concerned about Noemi and the possibility Josue would sexually abuse her. In addition, both Mother and Father claim that because Josue had moved out of the family home, that a threat no longer existed. However, it is clear that as of the time of the filing of the petition, Josue was back living at home.

In addition, the facts of this case are more consistent with *In re J.K* (2009) 174 Cal.App.4th 1426, than with *In re J.N.* (2010) 181 Cal.App.4th 1010. In *In re J.K,* a father was accused of sexual acts by a father against his nine-year-old daughter and striking her with such force he dislocated her shoulder. He argued on appeal that the incidents were one-time isolated incidents, and did not demonstrate a continuing or future risk to the minor. (*In re J.K., supra,* 174 Cal.App.4th at p. 1433.) The mother never took any steps to report the sexual abuse and did not believe the daughter's claims. (*Id.* at p. 1439.) In *In re J.N., supra,* 181 Cal.App.4th 1010, the parents acknowledged their wrongdoing in driving while intoxicated, were cooperative and remorseful. They had an

7

understanding of what they did wrong and took steps to address the conduct. Their attitude demonstrated they wanted to correct the behavior. (*Id*. at p. 1025.) Here, Father also attempts to minimize the impact of the evidence of the two reported offenses. It was clear to others and the court that the parents' denial of dangerous conditions and the failure to understand the need to avert harm warranted jurisdiction.

As the court noted in sustaining the petition: "But this goes way beyond, quote, unquote, playing doctor. This is very serious conduct that needs to be addressed. . . . [¶¶] This goes into a realm of not watching out and making sure that things like this [don't] happen, . . . [¶] This is not acceptable conduct what this young man did to his little brother. . . ." After striking some language in the petition, it found the allegations pursuant to section 300, subdivisions (b) and (d) true by a preponderance of evidence.

Here, the juvenile court had before it evidence of Father's attempts to conceal his wrongdoing in allowing Josue to drive and efforts to stymie the investigation into the circumstances. He told different versions of the incident. He appeared to be more worried about his legal liability than the condition of his injured child. As of this date, he insists that nothing is wrong with his family. Here, the parents appear to be unable to recognize the harm in the first instance and made repeated attempts to downplay the seriousness of the event.

Therefore we find that based on all the evidence presented to the court, there was substantial evidence to support the court's jurisdictional findings pursuant to section 300, subdivisions (b) and (d).

2. *The order maintaining jurisdiction*

Father contends that pursuant to section 364, the court should have terminated jurisdiction at the August 27, 2013 hearing.

Section 364 provides, inter alia, "(c) After hearing any evidence presented by the social worker, the parent, the guardian, or the child, the court shall determine whether continued supervision is necessary. The court shall terminate its jurisdiction unless the social worker or his or her department establishes by a preponderance of evidence that

the conditions still exist which would justify initial assumption of jurisdiction under Section 300, or that those conditions are likely to exist if supervision is withdrawn. . . ."

At the May 28, 2013 hearing, there was a discussion about the proposal to return Josue to the home. Counsel for U.S. and Noemi asked to keep the case open for three more months. Father requested a two-month period only. The Department asked for a three-month period over concern of allegations that Josue harbors ill will towards U.S. The court indicated that it wanted to ensure there would not be any further incidents. It stated, "What's the sense in going a month, two months and not having a full view over it and then a month or two later after we close it[,] it pops back up again because we didn't pay close enough attention to it in the first place. . . . The recommendation will be for closure of the case if everything is appropriate." It then set a hearing after a period of three months.

At the August 27th hearing, the court stated: "The children reside with the parents. There doesn't seem to be any risk issues and they are recommending J.T. but the case is on appeal, and the parties do not wish to drop their appeal. So we will keep the matter open until we get a remittitur from the appellate court. And we will proceed with the termination order when that happens. Everybody just keep doing what you're doing. Things are looking fine, and hopefully, when we come back on February 25, the appellate court will be of the mind to have us close the case."

Social worker reports submitted prior to this hearing indicated that Father had completed a parenting program and participated in individual and family therapy with Josue and the children. Father had admitted he exercised poor judgment in the past, and made himself available to the Department. Mother had been participating in support services. U.S. had participated in therapy and made significant progress physically and emotionally. There was no indication or concern that U.S. was anxious about Josue returning home. During supervised visitation, U.S. did not show any signs of distress being in close proximity to Josue. The Department recommended termination of jurisdiction.

9

In this appeal, Father contends there was no evidence U.S. was currently at risk of harm and there was absolutely no evidence the conditions still existed which justified the initial assumption of dependency jurisdiction, and the court should have terminated jurisdiction.

The Department filed a letter brief indicating it would not take a position as to this appeal, since it had recommended termination of jurisdiction.

While we agree that Father's appeal alone would not have justified keeping the case open, we note the juvenile court was greatly concerned about repeat offenses and the need to supervise the family once Josue returned home.  Keeping the case open from May 2013 until August 2013 was completely proper.  If the court believed there was no evidence in August 2013 that the conditions which caused the court to assume jurisdiction still existed, the court was obligated to terminate jurisdiction at that time.  (*In re N.S.* (2002) 97 Cal.App.4th 167, 172-173.)

*DISPOSITION*

The judgment in case No. B247521 is affirmed.

The order maintaining jurisdiction in case No. B251457 is reversed and the matter remanded to the juvenile court to terminate jurisdiction.

**WOODS, J.**

**We concur:**

**PERLUSS, P. J.**

**ZELON, J.**

10