Filed 5/6/15  In re K.B. CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re K.B. et al., Persons Coming Under the Juvenile Court Law. | B258438 (Los Angeles County Super. Ct. No. DK05058) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,  Plaintiff and Respondent,  v.  IRIS R.,  Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Steven Klaif, Referee.  Reversed.

Ernesto Paz Rey, under appointment by the Court of Appeal, for Defendant and Appellant.

Mark J. Saladino, County Counsel, Dawyn R. Harrison, Assistant County Counsel, and Stephen D. Watson, Deputy County Counsel, for Plaintiff and Respondent.

_____

Iris. R. (mother) challenges a jurisdictional order declaring her three children dependent children under Welfare and Institutions Code[1] section 300, subdivisions (b) and (j), and a dispositional order removing them from her custody. She contends the evidence is insufficient to support either order. We agree, and reverse.

## FACTUAL AND PROCEDURAL BACKGROUND

The minor subjects of this action, K.R. (born in 2007), and her younger brothers A.R. and Y.R., are the children of mother, and Gerardo B. (father; who is not a party to this appeal). On May 13, 2014, respondent Department of Children and Family Services (DCFS) received a report that mother, who had been under surveillance, had driven across the Mexican border with five-year-old A.R. and one-year-old Y.R. in the car, and was apprehended at a condominium in Downey. Mother was seen parking in the garage with the children. At some unspecified point later as she was leaving, mother was contacted by deputies. A search warrant was served. Officers recovered 14 pounds of methamphetamine and one pound of cocaine "from the location."

A DCFS children's social worker (CSW) was dispatched to the Downey location that day where she found the two boys with mother, who had been released.[2] A.R. appeared healthy, was adequately dressed and had no visible signs of abuse or neglect. Y.R. wore a diaper and T-shirt, and had a rash covering his body. Mother said the rash (later determined to be scabies) had been present for six months, and none of the creams she had obtained from doctors in Mexico had helped. The residence was sparsely furnished, and contained only the necessities of diapers, juice and milk. Mother told the CSW her family did not live at the Downey condominium. They lived in Tijuana, Mexico which was where K.R. was at the time (in father's care). Mother refused to provide contact information for father, claiming

---

[1] All further statutory references are to Welfare and Institutions Code unless otherwise indicated.

[2] The detective in charge told the CSW the matter remained under investigation, that mother "[would] be arrested," but that no criminal charges had yet been filed against her.

the couple had separated in early 2013. The CSW determined the children were at "high risk of abuse/neglect due to the mother's apparent ongoing transporting of illegal drugs into the U.S. while the children are in her vehicle," and recommended they be detained.

A section 300 petition was filed on May 16, 2014. The petition alleged that by transporting illegal drugs across the border with her sons in the car and her subsequent arrest, mother endangered the children's physical health, safety and well-being and put both the boys and their sister at risk of harm or danger. (§ 300, subds. (b), (j).)[3] The boys were detained the same day. K.R. was released to father's care, pending the next hearing. Mother was given monitored visitation, and DCFS was ordered to provide her referrals for drug testing. A jurisdictional hearing, which mother attended, began on June 18.

In its report for the jurisdictional hearing, DCFS reported that the criminal investigation was ongoing, that the police report had not yet been released, and that no criminal charges had yet been filed against mother. Mother took an on-demand drug test on June 12, 2014, which was negative.[4] In mid-June DCFS received a referral alleging A.R. said mother and father used to hit him with a belt and other objects. The reporter saw no sign of injuries and A.R. could not recall the last time he was struck. A.R. and Y.R. remained in foster care and K.R. was in Mexico with father. Father, temporarily without appropriate immigration documentation, was unable to enter the United States. DCFS was unable to interview K.R. in Mexico, but nevertheless recommended she be removed from father's custody. A.R. was interviewed. He denied knowing what drugs were, and said mother was

---

[3] Specifically, the petition alleged: "On 05/13/20 14, the children['s] . . . mother . . . placed the children [A.R.] and [Y.R.] in a detrimental and endangering situation in that the mother transported fourteen pounds of [m]ethamphetamine and one pound of [c]ocaine across an international border in the mother's vehicle while the siblings were passengers in the vehicle. On 05/13/2014, the mother was arrested for Conspiracy to Commit Crime due to the possession and transport of illicit drugs. Such a detrimental and endangering situation established for the children by the mother endangers the children's physical health, safety and well being and places the children and the children's sibling, [K.R.], at risk of physical harm, damage and danger."

[4] There is no indication mother was ordered to undergo more than a single test.

taken by the police even though she "didn't do anything." He also denied having been hit by either parent. A.R. was "very guarded" during the interview, and admitted that mother had advised him not to say anything. Y.R. was too young to be interviewed.

Mother was unwilling to discuss the petition's allegations without her attorney present, but agreed to discuss unrelated matters. She told DCFS she lived in Tijuana, and cleaned houses on weekends in La Puente. The children lived with their maternal grandmother in San Ysidro during the school year so they could be educated in the United States. Mother denied any past or current substance use or abuse. She told the CSW she understood the dangers posed by trafficking narcotics, observing: "'There could be shootings and people can get killed between family members or the drug dealers themselves. I understand there could be retaliation from the people who own the drugs. I know there could be problems any way you look at it.'" She refused to describe precautions the family had taken to ensure K.R.'s safety, because an "answer [to] that question . . . would be related to the allegations. All [she could] tell [DCFS] is that [K.R.] is fine and not under any form of risk."

Father was interviewed telephonically. He understood mother had been arrested because the children appeared neglected and she had driven them without car seats. He had heard that methamphetamine was involved, but did not suspect mother; mother had told him the drugs had belonged to a friend. The CSW explained the dangers the family might face if associated with drug trafficking. Father did not believe K.R. was at risk because she was not with mother when "everything occurred." He believed mother did neglect the children because their clothes and shoes were dirty, their hair was uncombed, and mother did not bring them food or diapers.

The children's maternal grandmother confirmed that mother lived in Tijuana, and worked weekends in Los Angeles. She concurred with father that mother neglected the children but did not use drugs. She said the children were always sick, but mother lacked health insurance so she would not take them to see doctors. Mother would not bathe Y.R., who had a rash on his body for about five months. The children's paternal grandmother also agreed mother neglected the children. She would not feed or pay attention to them, and

4

"always" drove them from Mexico to Los Angeles without car seats. She heard from father that the children were dirty and inappropriately dressed.

The continued adjudication hearing reconvened on June 24, 2014. Father, now living in San Ysidro, made his first appearance that day and was deemed the children's presumed, nonoffending father. K.R. was detained. The adjudication hearing was continued to July 22, 2014, at which point the petition was sustained and a disposition hearing scheduled for August 7, 2014.

Neither parent attended the August 7 hearing. DCFS requested the children be removed from the parents' care. Children's counsel agreed the children were at risk if they remained in parental custody. Mother's attorney pointed out that mother had never been charged with any crime and requested a home-of-parent order or an order placing the children with father. The hearing was trailed to the next day to enable the court to consider the matter. Both parents appeared on August 8, 2014. At the conclusion of the hearing, the children were removed from mother's custody, and placed in father's care under DCFS supervision. Mother was given monitored visitation, and ordered to participate in individual counseling to address the effects of narcotics accessible to the children.[5] This timely appeal ensued.

## DISCUSSION

Mother maintains the jurisdictional findings and dispositional orders must be reversed because there is no substantial evidence to support them. We agree that the jurisdictional findings lack sufficient evidentiary support and that as a result all subsequent orders, including the dispositional orders, must be vacated.

Section 300 provides, in pertinent part, that a child is subject to dependency court jurisdiction if the "child has suffered, or there is a substantial risk that the child will suffer, serious physical harm . . . as a result of the failure or inability of his or her parent . . . to adequately supervise or protect the child . . . . The child shall continue to be a dependent

---

[5] Subsequently, the case was transferred to San Diego County.

5

child pursuant to this subdivision only so long as is necessary to protect the child from risk of suffering serious physical harm or illness" or "[t]he child's sibling has been abused or neglected, as defined in subdivision . . . (b), . . . and there is a substantial risk that the child will be abused or neglected, as defined in th[at] subdivision[]. The court shall consider the circumstances surrounding the abuse or neglect of the sibling, the age and gender of each child, the nature of the abuse or neglect of the sibling, . . . and any other factors the court considers probative in determining whether there is a substantial risk to the child." (§ 300, subds. (b), (j).)

At the jurisdictional hearing, the "basic question under section 300 is whether circumstances at the time of the hearing subject the minor to the defined risk of harm." (*In re Nicholas B.* (2001) 88 Cal.App.4th 1126, 1134; *In re S.O.* (2002) 103 Cal.App.4th 453, 461.) It must be shown by a preponderance of evidence that a child is a person described by section 300. (§ 355, subd. (a).) A parent's past conduct may be probative of current conditions if the court has reason to believe the conduct will continue. (*In re S.O.*, at p. 461.) On appeal, jurisdictional findings and dispositional orders are reviewed under the substantial evidence test. (*In re J.K.* (2009) 174 Cal.App.4th 1426, 1433.) That tests asks whether there is evidence of reasonable, credible and solid value to support the juvenile court's determinations. (*In re E.H.* (2003) 108 Cal.App.4th 659, 669; *In re Angelia P.* (1981) 28 Cal.3d 908, 924.) If so, we must uphold the court's rulings. (*In re Veronica G.* (2007) 157 Cal.App.4th 179, 185.)

*1.      There is insufficient evidence to support the jurisdictional findings under section 300, subdivision (b).*

The question here is whether ambiguous evidence of a lone incident of potentially criminal parental misconduct was sufficient to subject mother's two sons and their distant sibling to juvenile court jurisdiction. As reflected in its findings, the juvenile court found true the petition's single allegation that mother placed the boys—and by extension their sister—at risk of physical harm by crossing the Mexican border knowingly transporting her sons and a large quantity of illegal drugs in her car, and was subsequently arrested for conspiracy to commit crime for possession and transportation of the drugs.

6

The facts before the trial court were far from sufficient to conclusively demonstrate that mother knowingly exposed her sons to endangerment by involving them in the transportation of illegal drugs across the international border; but that is not the test. We do not reweigh evidence, nor do we evaluate matters of credibility. (*In re E.H.*, *supra*, 108 Cal.App.4th at p. 669.) If substantial evidence supports the dependency court's findings, we must affirm those findings even if substantial evidence would also support a contrary finding. (*In re Dakota H*. (2005) 132 Cal.App.4th 212, 228.) Here, however, the record lacks sufficient evidence to prove the allegations of the petition, only something far less. By way of example, although mother was indisputably apprehended at a residence in Downey on May 13, 2014, the record contains no evidence she was ever actually arrested, let alone actually charged with any crime. Rather, it definitively reflects only that she was apprehended while leaving a residence in which illegal drugs were found, and was released the same day. Further, although DCFS intimates and the court—mistakenly—stated that large quantities of methamphetamine and cocaine were recovered from mother's car, the record does not so reflect.[6] Rather, the only indication is that drugs were recovered from inside a residence at which mother indisputably did not live. The detective informed DCFS that mother was stopped as she left the location. The record does not indicate how long she stayed at the Downey location after parking, or whether the boys entered the house. There is also no indication as to whether anyone transported anything from the vehicle into the house, or whether the drugs could already have been inside the residence when mother arrived. Nor does the record indicate that mother had the illegal drugs in her possession as she left the premises. Further, the petition alleges that mother was charged with "conspiracy" to commit a crime. The record contains no evidence of the existence or identity of a coconspirator, or that this or any criminal charges were ever filed against mother.

---

[6] The juvenile court's jurisdictional findings appear mistakenly to be premised on evidence which, based on our review, is not contained in the record, i.e., that the police "found . . . 14 pounds . . . of cocaine in the vehicle with the children . . . and it is more likely than not that [mother] knew [the drugs were] in the car."

Based upon this record, we conclude that the court's finding that DCFS proved, by a preponderance of evidence, the allegations that mother endangered the children by transporting them across the Mexican border in a car she knew contained large quantities of illegal drugs, was merely unsupported conjecture. Consequently, the evidence was insufficient to establish that any child suffered, or was at substantial risk of suffering, serious physical harm as a result of mother's failure or inability adequately to supervise or protect the child.

2.     *There is no evidence of current risk*

Even if we were to assume the evidence was sufficient to establish the children had suffered serious physical harm due to mother's failure to adequately supervise or protect them, courts typically refuse to exercise dependency jurisdiction under section 300, subdivision (b) absent evidence of ongoing or current risk. (See *In re Rocco M*. (1991) 1 Cal.App.4th 814, 824.) Although evidence of past conduct may be probative of current conditions, the evidence must be considered as a whole. The "past infliction of physical harm by a caretaker, standing alone, does not establish a substantial risk of physical harm; '[t]here must be some reason to believe the acts may continue in the future.' [Citations.]" (*Ibid*.; see *In re Carlos T*. (2009) 174 Cal.App.4th 795, 803 [finding of current risk is required for jurisdiction § 300, subd. (b)]; *In re James R.* (2009) 176 Cal.App.4th 129, 135–136 [same]; *In re Savannah M*. (2005) 131 Cal.App.4th 1387, 1396 [requiring showing at jurisdictional hearing that past physical harm likely to reoccur]; (*In re Ricardo L.* (2003) 109 Cal.App.4th 552, 565 [§ 300, subd. (j)]; but see *In re J.K.*, *supra*, 174 Cal.App.4th at p. 1435, fn. 5 [jurisdiction may be founded upon prior incident of harm or current risk of harm].)

To evaluate the risk based on a single episode of endangering conduct, the juvenile court considers the nature of the conduct and all surrounding circumstances. It should consider the present circumstances, which might include, among other things, evidence of the parent's understanding of the endangering conduct, participation in educational programs, or other steps the parent has taken to address the problematic conduct and support or supervision the parent is being or will be provided by DCFS or the criminal courts to help avoid recurrence of similar incidents. Despite the potentially profound seriousness of

mother's presumed endangering conduct on the occasion at issue here, the record contains no evidence from which to reasonably infer that there is a substantial risk such behavior will recur. Certainly, the Legislature has recognized that "[t]he provision of a home environment free from the negative effects of substance abuse is a necessary condition for the safety, protection and physical and emotional well-being of the child." (§ 300.2.) But here it was not alleged and the court did not find that mother was a substance abuser.[7] Thus, assuming the allegations of the petition are true, mother's involvement with illegal drugs involved a single incident of transporting methamphetamine and cocaine across the Mexican border. As reflected in her statement to the CSW, mother clearly appreciates the significant danger of engaging in such an activity.

Beyond that incident, however, there are no allegations that mother's parenting skills, general judgment, or understanding of the risk of her actions were materially deficient such that she was unable adequately to supervise or protect the children. Although there is evidence the children did suffer some amount of parental neglect (e.g., they were sometimes hungry or dirty, and one had scabies), none of the allegations of the petition were predicated on such neglect. In any event, the record also contains evidence both boys are generally healthy, relatively well-adjusted and cared for and developing appropriately.[8]

On this record we cannot find the evidence was sufficient to establish that the children were at substantial risk of serious physical injury as the result of mother's inability to adequately supervise or protect them. The evidence did not support a finding that A.R. or Y.R. was within the jurisdiction of the juvenile court under section 300, subdivision (b), or

---

[7] Mother denied any drug use, as did everyone DCFS interviewed who knows her. She was nevertheless ordered to undergo drug testing. She took one test; it was negative. The record does not reflect that mother missed any tests.

[8] The record does not contain an assessment of K.R., who remained in father's care.

that K.R. was within the jurisdiction of the juvenile court under section 300, subdivision (j).[9] The order declaring the children dependents of the juvenile court is reversed, and all subsequent orders, including the disposition order, are vacated as moot.

## DISPOSITION

The orders are reversed and the matter is remanded with directions that the court vacate those orders and issue new orders: (1) finding K.R., A.R. and Y.R. are not dependent children within its jurisdiction under Welfare and Institutions Code section 300; (2) dismissing the Welfare and Institutions Code section 300 petition as to those children; and (3) ordering those children discharged from any detention or placement theretofore ordered.

NOT TO BE PUBLISHED.


JOHNSON, J.


We concur:


ROTHSCHILD, P. J.


CHANEY, J.

---

[9] Because the record lacks sufficient evidence to support the allegation under section 300, subdivision (b) as to K.R.'s siblings, it fails, by necessity, to support the juvenile court's finding, upon a preponderance of the evidence, that K.R. is a dependent child under subdivision (j) of section 300.