Filed 12/10/15   In re B.S. CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| In re B.S., III, a Person Coming Under the Juvenile Court Law. | B263128 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | (Los Angeles County Super. Ct. No. CK65330) |
| Plaintiff and Respondent, | |
| v. | |
| B.S., II and G.V., | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Zeke Zeidler, Judge.  Affirmed and remanded with directions.

Megan Turkat Schirn, under appointment by the Court of Appeal, for Defendant and Appellant G.V.

Valeria N. Lankford, under appointment by the Court of Appeal, for Defendant and Appellant B.S. II.

Mary C. Wickham, Acting County Counsel, Dawyn R. Harrison, Assistant County Counsel, and Sarah Vesecky, Deputy County Counsel, for Plaintiff and Respondent.

_____

G.V. (mother) and B.S., II. (father) appeal from the January 5, 2015, order sustaining a Welfare and Institutions Code section 300 petition as to their daughter, B., and removing B. from mother's custody.[1]  Mother contends insufficient evidence supported the jurisdictional findings.  In addition, mother contends and the Department of Children and Family Services (DCFS) agrees that the juvenile court did not comply with Indian Child Welfare Act (ICWA) notice requirements.  Father joins in mother's contentions.  We affirm and remand for ICWA compliance.

## FACTUAL AND PROCEDURAL BACKGROUND

Viewed in accordance with the usual rules of appeal from an order sustaining a section 300 petition (*In re E.B.* (2010) 184 Cal.App.4th 568, 578), the evidence established that when B. was born in 2014, she was mother's youngest child.  Mother's older children and B.'s half siblings were 14-year-old K., seven-year-old J. and five-year-old G.  In 2003, DCFS received a referral alleging emotional abuse of then two-year-old K. by his father.  Around that time, mother gave custody of K. to maternal grandmother, who lives in Tennessee.  According to maternal grandmother, mother used illegal drugs throughout her subsequent pregnancies with J. and G.  In December 2006, J. was found to be a dependent child based on mother's substance abuse and parental rights as to J. were terminated in February 2008.[2]  By the time B. was born in 2014, K. and J. were living with maternal grandmother in Tennessee; G. was living with either maternal grandmother or a maternal aunt, also in Tennessee; mother was living in Reseda, with G.'s paternal grandmother, E.B.; and father was serving a six-year prison term.[3]

---

[1]    All future undesignated statutory references are to the Welfare and Institutions Code.

[2]    Mother inaccurately told the social worker that she voluntarily gave maternal grandmother custody of all three older children.

[3]    According to the Detention Report, E.B. was *J.'s* paternal grandmother.

2

B. was several days old when she came to DCFS attention after mother was arrested for driving a stolen vehicle and without a driver's license; B. was a passenger in the stolen car. B. was released to DCFS because the friend that mother wanted B. released to had drug and weapons related convictions. B. was placed in foster care.

Mother was at home when she spoke to the social worker the day after her arrest. Mother said she borrowed the car about three weeks before her arrest. At the time of her arrest, mother was on her way home from Ventura County, where she had gone to pick up baby clothes for B. Mother did not know there was any problem with the car until the officer who pulled her over told her it was a rental car which had been reported stolen because it had not been returned to the car rental company on time.[4] Mother had been previously charged with possessing methamphetamines and leaving the scene of an accident. She occasionally smoked marijuana, including while pregnant with B. to help with the morning sickness. Mother told the social worker that, although she had been unable to care for B.'s half-siblings, all of whom lived with maternal grandmother in Tennessee, mother was now older, more settled and able to care for B. Maternal grandmother told the social worker she would take custody of B. and intended to attend the detention hearing.

DCFS filed a petition alleging dependency jurisdiction under section 300, subdivision (b). Paragraph b-1 alleged jurisdiction based on mother "plac[ing] the child in a detrimental and endangering situation in that the mother drove a stolen vehicle with the child as a passenger in the vehicle. On 11/6/2014, the mother was arrested for Grand Theft Auto. . . ." Paragraph b-2 alleged jurisdiction based on mother's nine-year history of substance abuse, as well as on mother's current abuse "of marijuana, which renders the mother incapable of providing regular care of the child. The mother abused marijuana while pregnant with the child. The child is of such young age requiring constant care and

---

**4** According to the arrest report, mother told the arresting officer the car was a rental and that she knew it needed to be returned; she had attempted to extend the lease by phone.

3

supervision and the mother's illicit drug use interferes with providing regular care and supervision of the child. The child's sibling [J.] is receiving Permanent Placement Services. Such illicit drug use by the mother endangers the child's physical health and safety, placing the child at risk of physical harm, damage and danger."

Mother and E.B. (G.'s paternal grandmother with whom mother was then living) appeared at the detention hearing on November 12, 2014. E.B. was identified as a Non-Related Extended Family Member (NREFM) and submitted a caretaker information sheet. Mother signed a Parental Notification of Indian Status form, also known as a "form ICWA-020," on which she checked the box indicating she may have Indian ancestry. The following handwritten notation is on mother's form ICWA-020: "Cherokee on MGF's side – MGM would know."[5] At the hearing, the juvenile court and mother's counsel had the following colloquy:

> "THE COURT: The mother has filled out the ICWA-020 form indicating that she may have Indian ancestry on her father's side.
>
> [MOTHER'S COUNSEL]: And she just provided me with a laminated card saying that she is a member of the Oklevueha, its O-K-L-E-V-U-E-H-A, Native American Church of Southern California, as well.
>
> THE COURT: On October 12th of 2006, Referee Skeba ordered an investigation of Indian ancestry on the father's side – on the grandfather's side. On November 7th, it was continued for the ICWA investigation to be addressed. On December 13th of 2006, she found ICWA doesn't apply. [¶] Now, the membership card is for what?
>
> [MOTHER'S COUNSEL]: It is for the Oklevueha Native American Church.
>
> THE COURT: How do you spell that?
>
> [MOTHER'S COUNSEL]: O-K-L-E-V-U-E-H-A.

---

**5** On his form ICWA-020, father indicated he had no Indian ancestry.

THE COURT:  Okay.  That's not a federally recognized tribe. . . .  [**6**][¶] . . . [H]as your client got any new information regarding Indian ancestry since December of 2006?

[MOTHER'S COUNSEL]:  Nothing about what Judge Skeba had found. But the Oklevueha card indicates she is a member since May 29th of 2011.

THE COURT:  And that, according to the internet, is a kind of overall spiritual organization that combines various spiritual ideologies from the various tribes.  It is not a federally recognized tribe.  [¶]  The court does not have reason to know or believe that the child is an Indian child as defined by the Indian Child Welfare Act.  The Indian Child Welfare Act does not apply.  [¶]  The Department previously did an ICWA investigation, and the previously adopted child was found to not have ICWA apply.  And the mother doesn't have any new information subsequent to that investigation."

In addition to finding no reason to know B. was an Indian child, the juvenile court found DCFS had made a prima facie showing of dependency jurisdiction and that B. could not be safely returned to mother.  Regarding placement, mother explained that she was living with E.B. and suggested three alternatives:  (1) placement with E.B. as a NREFM while mother also lived there; (2) a PRI (pre-release investigation report) of E.B.'s home while mother lived there; or (3) placement with E.B. as a NREFM with mother living elsewhere.  B.'s counsel requested that E.B. be assessed as an NREFM with mother living elsewhere. The juvenile court ordered B. detained, gave DCFS suitable placement

---

**6**      ICWA applies only to "federally recognized tribes."  (*In re K.P.* (2009) 175 Cal.App.4th 1, 4; 25 U.S.C. § 1903(8).)  "Federally recognized tribe" means any tribe on the "List of Indian Entities Recognized and Eligible to Receive Services from the United States" published annually in the Federal Register by the Bureau of Indian Affairs.  (See 25 U.S.C. § 450b(e) [" 'Indian tribe' means any Indian tribe, band, nation, or other organized group or community, including any Alaska Native village or regional or village corporation . . . which is recognized as eligible for the special programs and services provided by the United States to Indians because of their status as Indians[.]"].)  On appeal, mother does not challenge the juvenile court's finding that the Oklevueha Native American Church of Southern California is not a federally recognized tribe, or the implicit finding that membership in that church alone does not trigger the ICWA notice requirements.

authority, including discretion to release B. to a relative or parent. It ordered DCFS to investigate placements with E.B. and maternal grandmother. Mother was ordered back for the jurisdiction hearing at 8:30 a.m. on January 5, 2015, and was admonished that the court could proceed in her absence, including declaring B. a dependent child.

During an interview on November 25, 2014, E.B. told the social worker that mother lived with E.B. during her pregnancy and E.B. never saw mother use any drugs; E.B. believed mother was a good mother. After E.B.'s home was approved for placement, the juvenile court ordered B. to be placed with E.B. as a NREFM, as soon as E.B. obtained a crib.

According to the Jurisdiction/Disposition Report, B. was in a non-related foster home; mother was no longer living with E.B. and father was still incarcerated. Both E.B. and maternal grandmother wanted B. placed with them. Father wanted B. placed with E.B. DCFS recommended that mother and father not receive any reunification services pursuant to section 361.5.[7]

Father appeared at the jurisdiction hearing and was found to be a presumed father. Mother did not appear. In response to the juvenile court's inquiry, mother's counsel said she did not know why mother was not present and requested a continuance; the juvenile court denied that request.[8] On the merits of the petition, mother's counsel argued it should be dismissed for insufficient evidence. Regarding paragraph b-1, she argued that, even assuming the overdue rental car was a "stolen car," there was no evidence that B. was in any danger while riding as a passenger in that car inasmuch as she was in a car seat, mother was not under the influence and was not driving unsafely. Regarding paragraph b-2, she argued that there was no showing of "substance abuse" or serious

---

[7]     Section 361.5, subdivision (b)(11) provides that reunification services need not be provided to a parent whose parental rights have been terminated as to a sibling or half-sibling and the parent "has not subsequently made a reasonable effort to treat the problems that led to removal of the sibling or half sibling of that child from the parent."

[8]     Later, mother claimed she was sick, but without a declaration from mother or a doctor, the court was not willing to reconsider its ruling.

physical harm or risk of serious physical harm to B. posed by mother's marijuana use. Father's counsel joined in mother's arguments. DCFS countered that jurisdiction was supported by the evidence that mother had failed to complete the court-ordered drug programs in the dependency case involving J., which resulted in termination of her parental rights as to him. DCFS also acted on maternal grandmother's report of extensive drug use by mother, and mother's own admission that she used marijuana while pregnant with B. The juvenile court sustained paragraphs b-1 and 2 of the petition.

Pending the disposition hearing, B. was detained with E.B. Mother and father both appeared at the disposition hearing. It was stipulated that mother had seven consecutive negative drug tests between November 2014 and January 2015 and she was regularly attending a 12-step program. The court found by clear and convincing evidence that removal of B. from mother's custody was necessary and appropriate. Pursuant to section 361.5, subdivision (e), the court ordered no reunification services for father, finding by clear and convincing evidence that such services would be detrimental to B.[9] Based on mother's negative drug tests and consistent 12-step program attendance (and over DCFS objection), the court ordered family reunification services for mother, including appropriate drug rehabilitation terms.

Mother timely appealed from the jurisdiction and disposition order; father timely appealed from the disposition order.

---

[9]     In support of his request for reunification services, father testified that he expected his 6-year sentence to be reduced to 16 months pursuant to Prop. 47; based on time served, father could be released as soon as 6 months. Although father joins in mother's arguments on appeal, he does not assert error in the denial of reunification services.

DISCUSSION

*A.     Sufficiency of the Evidence*

**1.     Standard of Review**

In dependency proceedings, the standard of proof at the jurisdictional stage is a preponderance of the evidence. On appeal, we review the juvenile court's jurisdictional findings for substantial evidence. (*In re Mariah T.* (2008) 159 Cal.App.4th 428, 438.) Under this standard, "all conflicts are to be resolved in favor of the prevailing party, and issues of fact and credibility are questions for the trier of fact. [Citation.]" (*In re P.A.* (2006) 144 Cal.App.4th 1339, 1345.) But " 'substantial evidence is not synonymous with any evidence. [Citations.] A decision supported by a mere scintilla of evidence need not be affirmed on appeal. [Citation.] Furthermore, "[w]hile substantial evidence may consist of inferences, such inferences must be 'a product of logic and reason' and 'must rest on the evidence' [citation]; inferences that are the result of mere speculation or conjecture cannot support a finding [citations]." [Citation.] "The ultimate test is whether it is reasonable for a trier of fact to make the ruling in question in light of the whole record." [Citation.]' [Citation.]" (*In re David M.* (2005) 134 Cal.App.4th 822, 828.)

" 'When a dependency petition alleges multiple grounds for its assertion that a minor comes within the dependency court's jurisdiction, a reviewing court can affirm the juvenile court's finding of jurisdiction over the minor if any one of the statutory bases for jurisdiction that are enumerated in the petition is supported by substantial evidence. In such a case, the reviewing court need not consider whether any or all of the other alleged statutory grounds for jurisdiction are supported by the evidence.' [Citations.]" (*In re I.J.* (2013) 56 Cal.4th 766, 774; *In re Alexis E.* (2009) 171 Cal.App.4th 438, 451.)

In this case, we need not consider whether there is substantial evidence to support jurisdiction based on mother driving with B. as a passenger in a stolen car as alleged in paragraph b-1 of the petition. This is because, as we shall explain, substantial evidence supports jurisdiction based on mother's substance abuse, as alleged in paragraph b-2.

## 2.    Jurisdiction Based on Mother's Substance Abuse

Mother contends there was insufficient evidence to support section 300, subdivision (b) jurisdiction based on her *current* substance abuse as alleged in paragraph b-2 of the petition.  She argues the only evidence of *current* use was her statement that she used marijuana while pregnant with B., but B. did not test positive for drugs at birth and mother had negative drug tests from November 2014 through January 2015.  We find no error.

The Legislature has recognized that the "provision of a home environment free from the negative effects of substance abuse is a necessary condition for the safety, protection and physical and emotional well-being of the child." (§ 300.2.)  Accordingly, it has made the "inability of the parent or guardian to provide regular care for the child due to the parent's or guardian's . . . substance abuse," a grounds for dependency jurisdiction.  (§ 300, subd. (b).)

The elements of section 300, subdivision (b) jurisdiction are:  (1) neglectful conduct by the parent in one of the specified forms; (2) causation; and (3) serious physical harm or a "substantial risk" of such harm.  (*In re Cole Y.* (2015) 233 Cal.App.4th 1444, 1452.)  " 'The court need not wait until a child is seriously abused or injured to assume jurisdiction and take the steps necessary to protect the child.' [Citation.]"  (*I.J., supra*, 56 Cal.4th at p 773.)  However, the "serious physical harm" element requires a showing that at the time of the jurisdictional hearing the child is at substantial risk of serious physical harm in the future.  (*Cole Y.* at p. 1452.)  Thus, section 300, subdivision (b) jurisdiction based on parental substance abuse must be supported by substantial evidence that, at the time of the jurisdictional hearing, the child is at substantial risk of serious physical harm caused by the parent's substance abuse.

A finding that a parent is a substance abuser does not necessarily mean the parent is "unable to provide regular care resulting in a substantial risk of physical harm to the child."  (*In re Drake M.* (2012) 211 Cal.App.4th 754. 766.)  Cases finding substantial risk of danger " 'tend to fall into two factual patterns.  One group involves an identified,

9

specific hazard in the child's environment — typically an adult with a proven record of abusiveness. [Citations.] The second group involves children of such tender years that the absence of adequate supervision and care poses an inherent risk to their physical health and safety. [Citations.]' [Citation.]" (*Id.* at p. 767.) The *Drake M.* court held that in cases involving young children, a finding of substance abuse is prima facie evidence of the inability of a parent or guardian to provide regular care resulting in a substantial risk of physical harm. (*Ibid.*) Because B. is an infant, this case falls under *Drake M.*

"A parent's ' "[p]ast conduct may be probative of current conditions" if there is reason to believe that the conduct will continue.' [Citation.]" (*In re Christopher R.* (2014) 225 Cal.App.4th 1210, 1216.) Two cases offer guidance: *Christopher R., supra* and *In re S. O.* (2002) 103 Cal.App.4th 453. In *Christopher R.*, the mother admitted to using cocaine when she was 16 years old, but claimed she stopped when she was 17; she could not explain why she and her baby tested positive for cocaine at the baby's birth. The court of appeal found the mother's use of cocaine while pregnant "unquestionably" endangered the health and safety of her unborn child. This evidence, considered together with the mother's "unstable lifestyle" and failure to enroll in any recommended programs, supported the juvenile court's finding that her substance abuse endangered her children. (*Christopher R.,* at p. 1217.)

Although not a substance abuse case, *S. O.*, is nevertheless instructive. In *S. O.*, section 300, subdivision (b) jurisdiction over six siblings was based on the children's exposure to violent confrontations between the mother and Enrique, the presumed father of all but the oldest of the six siblings. The seventh sibling, S. O., was born one month later. One month after that, a section 300, subdivision (b) petition was filed as to S. O., which alleged jurisdiction over S. O. based on his risk for exposure to violent confrontations as demonstrated by the circumstances leading to jurisdiction over his siblings. The Court of Appeal found that, although the incident that led to the detention of the older siblings occurred a year before, jurisdiction over S. O. was supported by evidence the mother had yet to reunify with the siblings, had permitted Enrique to have unsupervised contact with them and had planned for Enrique to take mother and S. O.

10

home from the hospital. (*S. O., supra,* 103 Cal.App.4th at p. 462.) In other words, the mother's past conduct was sufficient evidence that such conduct would continue.

Here, the Detention and Jurisdiction/Disposition Reports were admitted into evidence. According to the Detention Report, mother's criminal history included a charge of methamphetamine possession. Mother's substance abuse led to half-sibling J.'s detention in 2006 and termination of her parental rights to J. in 2008. Maternal grandmother told the social worker that "mother has had a problem with marijuana and that was the reason DCFS took her last child, J. away from mother . . . ." After B. was detained, mother admitted smoking marijuana occasionally, including while pregnant with B. According to the Jurisdiction/Disposition Report, mother "admits to her drug history as to marijuana." Additionally, maternal grandmother told the social worker that mother used "HGB (date rape drug) all throughout her pregnancy with [G.]" and used cocaine throughout her pregnancy with J. From the context of maternal grandmother's statement that G. had "a lot of problems," it is reasonable to infer that G.'s problems were the result of his prenatal exposure to HGB. This evidence was sufficient to support a finding that mother had a history of substance abuse, which put B. at risk of serious harm.

During the two months after dependency proceedings had begun, mother consistently tested negative and was attending a 12-step program. But it does not follow from this evidence that mother did not have a current substance abuse problem. The juvenile court could reasonably conclude that a two-month period of abstinence was insufficient to demonstrate that mother's substance abuse problems were truly resolved and not just in abeyance.

Mother's reliance on *In re David M.* (2005) 134 Cal.App.4th 822, for a different result is misplaced. In *David M.*, 2001 dependency proceedings were triggered by A.W.'s positive toxicology for marijuana at birth and the mother was diagnosed as mentally impaired due to her long history of marijuana use. (*Id.* at pp. 825-826.) Three years later, A.W.'s half-siblings, two-year-old David and two-day-old A., were detained after the mother tested positive for marijuana at A.'s birth (A. tested negative). The juvenile court based section 300, subdivision (b) dependency jurisdiction over David and

A. on the mother's "extensive history of substance abuse, the delusional nature of mother's mental condition, her selection of caretakers . . . there is a present substantial risk of harm to both David and [A.] . . . ." (*Id*. at p. 828.) The Court of Appeal found insufficient evidence to support section 300, subdivision (b) jurisdiction for two reasons. First, the mother's mental and unresolved substance abuse problems were not tied to any actual harm suffered by David or A., or to any substantial risk of serious future harm. (*Id*. at pp. 829-830.) Second, section 300, subdivision (b) jurisdiction could not be based solely on the mother's past neglect of A.W. "While evidence of past conduct may be probative of current conditions, the question under section 300 is whether circumstances at the time of the hearing subject the minor to the defined risk of harm. [Citations.]" [Citation.]' [Citation.] SSA failed to meet its burden in this regard." (*Id*. at p. 831.)

*David M.* is distinguishable in that, in *David M.*, the only evidence of past conduct was the mother's neglect of one child, which the Court of Appeal found insufficient to show a present risk of harm to two younger children. In this case, the past conduct evidence is mother's neglect of three older children. This evidence demonstrates a pattern of conduct not present in *David M.* From this pattern of past conduct, it is reasonable to infer future risk of serious physical harm to B.

### 3. The Disposition Order

Mother contends the disposition order should be reversed because there was insufficient evidence to support the jurisdiction order. Since we find substantial evidence to support dependency jurisdiction based on mother's history of and current substance abuse, this contention necessarily fails.

### B. ICWA

B. and her half-sibling, J., are both mother's biological children; it is through mother that J. claimed Indian heritage in his 2006 dependency case; it is also through mother that B. claims Indian heritage in this case. In this case, the juvenile court found no reason to know B. was an Indian child based on the 2006 finding in J.'s dependency

12

case that he was not an Indian child. DCFS concedes mother's contention that the juvenile court did not comply with the ICWA notice requirements in this case. Where, as here, parental rights are not terminated, the appropriate remedy is to remand for ICWA compliance. (*In re Veronica G.* (2007) 157 Cal.App.4th 179, 187-18.)

## DISPOSTION

The January 5, 2015 orders sustaining the section 300 petition and removing B. from mother's custody are affirmed and the matter is remanded to the juvenile court with directions to comply with the inquiry and notice provisions of ICWA, if it has not already done so. After proper notice under ICWA, if it is determined that B. is an Indian child and ICWA applies to these proceedings, B., mother and their tribe may petition the juvenile court to invalidate any orders that violated ICWA. (See 25 U.S.C. § 1914; California Rules of Court, rule 5.664(n)(1).)


                                                            RUBIN, J.
WE CONCUR:


            BIGELOW, P. J.


            GRIMES, J.