68 Cal.Rptr.3d 465 (2007)
157 Cal.App.4th 179
In re VERONICA G. et al., Persons Coming Under the Juvenile Court Law.
San Mateo County Human Services Agency, Plaintiff and Respondent.
v.
Christy G. et al., Defendants and Appellants.
No. A117131.
Court of Appeal of California, First District, Division Three.
November 27, 2007.
*466 Amy Z. Tobin, by appointment of the Court of Appeal Under the First District Appellate Project's Independent Case System, for Appellant Christy G.
Jessica M. Ronco, by appointment of the Court of Appeal Under the First District Appellate Project's, Independent Case System, for Appellant Samuel G., Sr.
Thomas F. Casey III, County Counsel, Kimberly A. Marlow, Deputy Counsel, for Respondent San Mateo County Human Services Agency/ Children and Family Services.
HORNER, J.[*]
Mother Christy G. and father Samuel G., Sr. (jointly "parents") appeal the juvenile court's jurisdictional order regarding their minor daughter Veronica G., and son Samuel G., Jr. Parents contend: (1) that the juvenile court's jurisdictional order is not supported by substantial evidence; and (2) that the juvenile court failed to comply with the notice requirements of the Indian Child Welfare Act ("ICWA"). As more fully explained below, we conclude the juvenile court's jurisdictional order is supported by substantial evidence. However, we remand for the limited but essential purpose of ensuring compliance with the ICWA.

Factual & Procedural Background
On December 29, 2006, respondent San Mateo County Human Services Agency ("Agency") filed protective custody warrants and juvenile dependency petitions pursuant to Welfare and Institutions Code *467 section 300, subdivision (b)[1] on behalf of Veronica (born April 1995) and Samuel (born August 1997). The petitions alleged that oh or about December 27, 2006, during a welfare check at the home by the San Mateo County Sheriffs Department, both children stated that their mother physically abused them on a daily basis by choking, kicking, pulling their hair, hitting them with a closed fist or open hand, and the father witnessed such abuse but did nothing to stop it. The petitions also alleged father was arrested at the home on an outstanding warrant for use of force with a deadly weapon and willful cruelty to a child arising from an incident in which he rammed his truck into mother's car three times while mother and Samuel were inside the car. As to Veronica, the petition also alleged that about a year ago mother burned Veronica's stomach with a cigarette lighter because she would not wake up, leaving a scar about the size of a dime on her stomach. As to Samuel, the petition alleged that about two years ago mother burned Samuel on his right arm with a cigarette lighter, leaving a small scar about the size of a pencil eraser.
The detention report filed on January 2, 2007, states that mother reported that she and her children were inactive members of an unspecified Tribe, and that she may have Indian ancestry. Father reported he may be a member of two Mexican Indian tribes, the Amezqua and Teutchixlatan. The detention report recommended that due to the statements made by both children regarding abuse by their mother, the documented history of domestic violence between the parents, and the parents denial of any violence in the home, the children should be detained in protective custody. At a continued detention hearing on January 4, 2007,[2] the court found there was a substantial risk to the children's physical and emotional well being and ordered the children detained. The court ordered the Agency to comply with the ICWA and set a jurisdictional hearing for January 25, 2007, and a contested hearing date of February 26, 2007, if required.
The Agency's Jurisdictional/Disposition report filed on January 22, 2007, states that appellants signed JV-130 forms (Parental Notification of Indian Status) "on December 28, 2006, and [the Agency] sent notification by mail to the Federal Bureau of Indian Affairs on January 2, 2007." The report stated that Veronica reported that "when she misbehaves by not following directions, her mother punishes her by doing things such as throwing a shoe at her, grabbing her arm, and hitting her all over her body." Veronica reported this happened every day. Samuel reported that every day mother hits or kicks him and his sister. Additionally, the report stated that mother denied burning the children and "typical discipline in the home consists of spanking on the butt, `nose in the corner' or `popping' Samuel [ ] in the mouth when he calls her a `bitch.'" The case plan called for the children to return home by a projected date of July 26, 2007; for mother to participate in counseling, a mental health evaluation, and a parenting education program, and for father to participate in a domestic violence/anger management program.
An addendum report filed on February 21, 2007, stated that the children continued to have weekly supervised visits with their parents, and since the last court hearing an additional visit of an hour and a half in *468 length, each week, had been added. The report stated that the children had expressed a desire to return to their parents but also confirmed mother hit them on a daily basis and that they had witnessed father hit mother. Veronica also reported father had choked Samuel on one occasion; Samuel did not remember exactly what happened, except that father "got very angry, and hurt him." The report recommended that the children be declared wards of the court and that they be committed to the Agency's care, custody and control.
A contested jurisdictional hearing was held on February 26,2007. Alexis Morgan (social worker) testified that she met with father after the January court hearing and advised him to enroll in the domestic violence treatment program and he had not yet done so. Father had not returned Morgan's calls, and she had been unable to find out where parents were currently living. Morgan stated she had been unable to refer parents to the parenting education class because she did not know their current address. Morgan stated that in her opinion parents were not cooperating with the Agency.
Regarding the allegations in the petition, Morgan stated she learned from Officer Raffaelli of the San Mateo County Sheriffs Department that when Raffaelli went to the family's home on December 27, both children reported that their mother hits them with an open hand or closed fist and that she kicks them. Both children also reported to Raffaelli that their mother had burned each of them one time. Morgan interviewed the children and each child reported to her that "they're hit or kicked or choked or in some way physically disciplined by their mother on a daily basis." Also, both children told Morgan that they'd seen "father hit their mother including smacking her and hitting her to the floor and choking her." The children also told her that father was present When mother hit them and he did not intervene. Each child showed Morgan a small scar on his and her body. The children each said that mother had burned them once with a cigarette lighter. On cross, Morgan stated she saw no marks or bruises on the children. In response to questioning from Samuel's counsel, Morgan stated that she interviewed Samuel on January 9, to prepare the jurisdictional report of January 25, and had also talked to him after that date. Samuel had been consistent in his descriptions of abuse and had not retracted any of the statements he made on January 9. Since then, Samuel had told her about another incident of abuse, in which he had kept asking father something over and over and "his father got very angry and hurt him and he doesn't remember exactly what his father did."
San Joaquin County Deputy Sheriff Justin Dawson testified he responded to a report of a family disturbance at appellants' home on September 5, 2006. Mother told Dawson that father, who she was filing for divorce against, had hit her car while she and her son were in the vehicle. Dawson observed scratches and dents on the front passenger portion of mother's vehicle. Mother told Dawson there had been prior incidents of domestic violence between her and father resulting in police being called. Mother said she had been struck previously by her husband. Samuel told Dawson mother and father had argued and when he and his mother got in the car to leave, father hit their car. Mother and Samuel told Dawson that father struck their vehicle three times with his vehicle. When Dawson called father via cell phone, father denied he had rammed mother's car with his truck but father would not permit Dawson to inspect his truck. Dawson obtained an Emergency Protective Order (EPO) ordering father *469 to stay at least 100 yards from the house and the family. Dawson also filed charges against father for a violation of Penal Code section 245, subdivision (a)(1), assault with a deadly weapon, and Dawson has been subpoenaed to testify at the upcoming trial on those charges. Dawson stated that "from the reaction from her children and the fear I saw" he had no reason to doubt any of the statements he took from the victims at the scene. Shortly after he left the scene, Dawson received a call from mother stating that father had called. Father told mother he knew about the EPO, and added: "You better watch your ass."
San Mateo County Deputy Sheriff Patricia Raffaelli testified she visited parents' home on December 27, 2006, to do a welfare check. Raffaelli contacted mother and stated she needed to talk to the children regarding possible child abuse. The children said their mother had a bad temper and hit them often. After the children told a social worker they had been burned, Raffaelli asked the children if the burns had been caused by their mother, and they replied in the affirmative. At that point, the court recessed till the following day because Veronica felt ill. Next morning, Raffaelli stated at conclusion of direct that the children appeared to be telling the truth. She said she asked the children "a follow-up question" which confirmed in her mind that they were telling the truth: She asked them "if they were afraid of their mom and they said yes." On cross, Raffaelli stated she found no bruises on the children. On cross by Samuel's counsel, Raffaelli stated that she interviewed the grandmother with whom appellants were staying at the time. The grandmother indicated "that she heard of lot of screaming ... from both the children and from the mother.... [¶] ... [¶] [Grandmother] said [mother] had a bad temper and that she yelled and screamed at the kids all the time."
Regarding jurisdiction, the juvenile court ruled as follows: "There's an abundance of evidence well beyond a preponderance as to each one of the [section 300] B counts, as to each of these children, and it's just a shame that these children had to be put through this and that it was under the radar for so very long. In a way, horrible as it was ..., father's violent ramming of thewith the vehicle proved to be sort of the key for us to get involved and prevent further harm. [¶] These children have just been through so much and it's just mind-boggling to me that they're not more damaged than they are. They really seem like a resilient pair, [¶] So I'm going to sustain the allegations, find that they are described by Section 300, and we can proceed to disposition."[3]

Discussion

A. Jurisdiction
At the jurisdictional hearing, the court determines whether the minor falls within any of the categories specified in section 300. (In re Michael D. (1996) 51 *470 Cal.App.4th 1074, 1082, 59 Cal.Rptr.2d 575.) `"The petitioner in a dependency proceeding must prove by a preponderance of the evidence that the child ... comes under the juvenile court's jurisdiction.'" (In re Shelley J. (1998) 68 Cal. App.4th 322, 329, 79 Cal.Rptr.2d 922.) On appeal from an order making jurisdictional findings, we must uphold the court's findings unless, after reviewing the entire record and resolving all conflicts in favor of the respondent and drawing all reasonable inferences in support of the judgment, we determine there is no substantial evidence to support the findings. (In re Monique T. (1992) 2 Cal.App.4th 1372, 1378, 4 Cal. Rptr.2d 198.) Substantial evidence is evidence that is reasonable, credible, and of solid value. (In re Angelia P. (1981) 28 Cal.3d 908, 924, 171 Cal.Rptr. 637, 623 P.2d 198.)
Parents assert that the evidence was insufficient to sustain a jurisdictional finding because no bruises were found on the children, the "purported cigarette burns" on the children were over one and two years old, and the father's vehicle-ramming incident happened months before the jurisdictional hearing. On this basis, parents assert there was no longer risk of serious harm or illness to the children.
We recognize that "the question under section 300 is whether circumstances at the time of the hearing subject the minor to the defined risk of harm" and that "`[t]here must be some reason to believe the [abusive] acts may continue in the future.'" (In re Rocco M. (1991) 1 Cal. App.4th 814, 824, 2 Cal.Rptr.2d 429). However, the juvenile court in this case was presented with substantial evidence of a sustained pattern of physical and emotional abuse of the children perpetrated in an environment of ongoing domestic violence between the parents. Both children testified mother struck them daily with an open hand or fist, or kicked them, and that father witnessed this behavior but did not stop it. Mother admitted that she "popped Samuel in the mouth." That such abusive behavior had been ongoing for some time is corroborated by evidence of the children's burn marks, which they stated had been caused by mother with a cigarette lighter between one and two years ago. Both children stated they were afraid of their mother. Both children stated they had witnessed acts of domestic violence in which father slapped mother, pushed her to the floor and choked her. Samuel confirmed his father rammed his mother's car with his truck three times as they tried to leave the house after father and mother argued. The children's testimony constitutes ample evidence for the trial court's conclusion they were at a substantial risk of serious physical and emotional harm.[4]
Parents argue the evidence to sustain jurisdiction was insufficient because there was no evidence of bruising or marks *471 found on the children at the time of intake. However, the children's testimony is not diminished merely because they did not happen to carry bruises on the day the abuse was discovered. Nor do we accept mother's suggestion that the "children's allegations are simply not credible" on account of the lack of marks and bruising. Whereas the children themselves did not testify, the juvenile court heard other evidence tending to corroborate the sincerity and credibility of their testimony: (1) Deputy Dawson stated that "from the reaction from her children and the fear I saw" he had no reason to doubt any of the statements he took from Samuel about the ramming incident, although father denied it had happened; (2) Deputy Raffaelli stated the children appeared to be telling the truth about mother hitting them daily, so just to be sure she asked them if they were afraid of their mother and they replied they were; (3) the social worker stated she interviewed Samuel on January 9, to prepare the jurisdictional report of January 25, and had also talked to him after that date, and he had been consistent in his descriptions of abuse and had not retracted any of the statements he made on January 9.
In sum, we conclude substantial evidence supports the juvenile court's jurisdictional findings. Accordingly, we will not disturb them on appeal.

B. ICWA
Parents assert that the juvenile court failed to comply with the notice requirements of the ICWA. The Agency agrees and concedes error on this point. The parties differ, however, as to the appropriate remedy. Parents assert the juvenile court's failure to adhere to the notice requirements of the ICWA constitutes prejudicial error, meaning that we must vacate the juvenile court's jurisdictional and dispositional orders and remand for compliance with the ICWA. The Agency, on the other hand, asserts that we may leave the juvenile court's orders in place and effect a "limited remand" to effect compliance with the ICWA. In this case, we agree with the Agency that only a limited remand is warranted.
As here, the court in In re Brooke C. (2005) 127 Cal.App.4th 377, 25 Cal.Rptr.3d 590, discussed insufficient ICWA notice in the context of a dispositional order. The court concluded that an ICWA notice error is not jurisdictional, and therefore ordered a limited remand to the juvenile court for the agency to comply with ICWA notice requirements, with directions to the juvenile court depending on the outcome of such notice. (In re Brooke C, supra, 127 Cal.App.4th at pp. 385-386, 25 Cal.Rptr.3d 590.) The In re Brooke C. court noted an apparent split in authority on this issue, but relied on the thorough analysis set forth in In re Antoinette S. (2002) 104 Cal.App.4th 1401, 129 Cal.Rptr.2d 15, stating: "Antoinette S. reviewed the California constitutional and statutory provisions granting the juvenile court original jurisdiction in dependency proceedings. It concluded that the statements in the cases to the effect that the juvenile courts had no jurisdiction when the notice provisions of the ICWA are not met `appear[ ] to have been simply a shorthand way of saying the ICWA violations under consideration in those cases constituted serious legal error. Indeed, the statements regarding "no jurisdiction" are only dicta. In each case, the reviewing court reversed or remanded because the lack of notice was prejudicial errorany additional language regarding "jurisdiction" was mere surplusage. [Citations.]' [Citation.] The court in Antoinette S. concluded that violation of the notice required by the ICWA is not jurisdictional error, observing that to hold otherwise would deprive the juvenile *472 court of all authority over the dependent child, requiring the immediate return of the child to the parents whose fitness was in doubt. [Citation.] [If] Applying this legal reasoning and following the majority of the cases, the only order which would be subject to reversal for failure to give notice would be an order terminating parental rights. [Citation.] No such order exists in these proceedings. Accordingly, all jurisdictional and dispositional orders, including the order ... appea[ed], remain in effect." (In re Brooke C, supra, 127 Cal.App.4th at pp. 384-385, 25 Cal.Rptr.3d 590, quoting Antoinette S., supra, 104 Cal. App.4th at p. 1410, 129 Cal.Rptr.2d 15.) We are persuaded by the reasoning of In re Brooke C. and In re Antoinette S. and agree with their view that the error here was not "jurisdictional" in the fundamental sense, and that reversal is only appropriate where parental rights have been terminated. (In re Brooke C, supra, 127 Cal. App.4th at pp. 384-385, 25 Cal.Rptr.3d 590; In re Antoinette S., supra, 104 Cal. App.4th 1401 at pp. 1410-1411, 129 Cal. Rptr.2d 15; see also In re Jonathon S. (2005) 129 Cal.App.4th 334, 340-342, 28 Cal.Rptr.3d 495 [concurring with those courts that have held that an ICWA notice violation is not jurisdictional and concluding that the only order subject to reversal on appeal is the order terminating parental rights, not earlier orders of the juvenile court].) Parental rights were not terminated here. Consequently, the appropriate remedy is to remand for ICWA compliance.

DISPOSITION
The juvenile court's jurisdictional order is affirmed, and the matter is remanded to the juvenile court with directions to comply with inquiry and notice provisions of the ICWA, if it has not already done so. After proper notice under the ICWA, if it is determined that either Veronica or
Samuel is an Indian child and the ICWA applies to these proceedings, parents are entitled to petition the juvenile court to invalidate orders that violated the ICWA. (See 25 U.S.C. § 1914; California Rules of Court, rule 5.664(n)(l).)
McGUINESS, P.J., and SIGGINS, J., concur.
NOTES
[*] Judge of the Alameda County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.
[1] Further statutory references are to the Welfare & Institutions Code unless otherwise noted.
[2] The detention hearing on January 2, 2007, was continued in order to obtain separate counsel for Veronica and Samuel.
[3] At the conclusion of the hearing, the juvenile court declared dependency as to both children and confined parental visitation to one hour per week "until we have had the benefit of a supervised therapeutic visit at least two hours in duration with a report back, and then I will entertain a step-up in visitation depending on the result of that." Subsequently, after father declared suicidal tendencies in open court, the juvenile court ordered visitation could only take place where a metal detector was available to screen father before the visit. The court set an interim review hearing for June 6, and a six-month review hearing for August 20, 2007. Parents do not contend that the court's dispositional order was an abuse of discretion. Rather, they contend that like the jurisdictional order, it too is void for failure to comply with the notice requirements of the ICWA (see Section B, infra ).
[4] Parents rely on cases in which courts reversed jurisdictional orders based upon facially inadequate allegations or a single allegation of abuse occurring some time ago. (See In re Janet T. (2001) 93 Cal.App.4th 377, 388-389, 113 Cal.Rptr.2d 163 [allegations that children failed to attend school regularly and that mother had demonstrated numerous mental and emotional problems insufficient to show children were subject to "substantial risk" of suffering or "serious physical harm or illness"]; In re Alysha S. (1996) 51 Cal.App.4th 393, 399, 58 Cal.Rptr.2d 494 [where all that is alleged is "that the father, over one year ago, touched the minor's privates in a manner the mother felt was inappropriate" and "[t]here are no allegations as to the severity of any physical harm resulting from the alleged touchings[,]" and "no allegations indicating '"the acts may continue in the future" then "[t]hat alone does not now establish a reason for state interference with the family"].) Such cases are wholly inapposite to the facts adduced above.