Filed 9/11/20  In re A.C. CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re A.C. et al., Persons Coming Under the Juvenile Court Law. | |
| MENDOCINO COUNTY HEALTH AND HUMAN SERVICES AGENCY,<br><br>        Plaintiff and Respondent,<br>v.<br>S.E.,<br><br>        Defendant and Appellant. | A158779<br><br>(Mendocino County Super. Ct. No. SCUK-JVSQ-19-18149-01) |

S.E. (Mother) appeals from orders made by the juvenile court at a jurisdiction and disposition hearing concerning her minor children A.C. and S.C. (Minors).  At the hearing, the court found that the Indian Child Welfare Act (ICWA, 25 U.S.C. § 1901 et seq.) did not apply, and that Minors came within the jurisdiction of the court under Welfare and Institutions Code[1] section 300.  The court ordered Minors removed from Mother's custody and placed in foster care.

---

[1] Unspecified statutory references are to the Welfare and Institutions Code.

Mother does not challenge the orders on the merits:  the sole issue on appeal is compliance with the inquiry and notice requirements of ICWA.  We remand the matter for compliance with ICWA and otherwise conditionally affirm the orders.

### FACTUAL AND PROCEDURAL BACKGROUND

In June 2019, the Mendocino County Health and Human Services Agency (Agency) filed a petition alleging that S.C. and A.C., then age 17 and 16 respectively, were at substantial risk of suffering serious, non-accidental harm inflected by Mother and that Mother was unable to adequately supervise or protect Minors due to her substance abuse and violence.[2]  (§ 300, subds. (a) & (b)(1).)  Attached to the petition was a Judicial Council form ICWA-010, "Indian Child Inquiry Attachment," for each Minor.  Boxes were checked to indicate that an Indian child inquiry had been made and that each "child may have Indian ancestry."  The forms stated that Mother had been questioned about Minors' possible Indian ancestry and answered "maybe," but did not know the tribe.

According to the detention summary that was prepared by the Agency and read by the court in advance of the June 2019 detention hearing, "The children stated they may have Indian Ancestry but were unable to identify a tribe."  At the hearing, the court asked Mother whether she had any Native American ancestry.  Mother responded, "I do.  I just don't know the details of

---

[2] We do not discuss the substance of the factual allegations in the petition because they are irrelevant to this appeal.  The petition also alleged that Minors' father failed to supervise or protect Minors from Mother and left Minors with no provision for support (§ 300, subds. (b)(1) & (g)); that his whereabouts were unknown; and that efforts to locate him had been unsuccessful.  He had not appeared before the juvenile court by the jurisdiction and detention hearing and is not a party to this appeal.

it because my grandmother didn't speak English so it was very hard for us to communicate." Mother confirmed that she was speaking of her maternal grandmother and to her knowledge any Indian ancestry would be on her mother's side. Mother's sister V.E. had previously been identified as a person who might be willing to take placement of the Minors, and the court stated that the Agency may want to talk to Mother's sister to see if she knew something more about Mother's Indian ancestry. Mother said, "She won't," but had no objection to the Agency making an investigation. The same day as the detention hearing, Mother signed an initial Judicial Council form ICWA-020, "Parental Notification of Indian Status," on which she checked the box corresponding to "I may have Indian ancestry," but did not identify any tribe or band.

The findings and orders for detention, signed by the juvenile court on June 13, 2019, included the heading "Non-ICWA Case," and gave the Agency temporary placement and care of Minors.

On July 3, 2019, a specialist at the Agency sent Judicial Council form ICWA-030, "Notice of Child Custody Proceeding for Indian Child" to the Sacramento Area Director of the Bureau of Indian Affairs (BIA). The form included Mother's name, current and former address, date of birth, and state of birth. In addition, the form included the married and maiden names of Mother's mother, her date of birth, and state of birth, as well as the name of Mother's father, his date of birth and state of birth. The current and former addresses for Mother's mother and father were reported as "Unknown, San Antonio, TX." As to tribe or band and location, for Mother and her parents the form stated, "Bureau of Indian Affairs, No Tribe Specified, No Tribe Specified."

A jurisdiction/disposition report dated August 2, 2019, was submitted to the court in advance of the jurisdiction/disposition hearing. With respect to ICWA applicability, the Agency reported as follows: "At the detention hearing . . ., [Mother] stated that [Minors] may have Native American heritage with unknown tribes. Therefore, the Agency noticed the [BIA] on July 3, 2019. [¶] On July 11, 2019, the [BIA] responded by stating insufficient information to determine Tribal affiliation." The Agency recommended the juvenile court find that ICWA does not apply.

The jurisdiction/disposition report also stated that as part of the Agency's efforts to identify and assess family members for possible placement of Minors, a social worker spoke with Minors' adult full sister (K.C.) and with Minors' aunt V.E. on July 8, 2019—several days *after* the Agency completed form ICWA-030 and sent it to the BIA. The Agency provided information about the social worker's discussions with K.C. and V.E., but there is no indication that the social worker asked either of them about Minors' Indian ancestry. According to the report, V.E. confirmed family members and provided contact information, and the next day the Agency sent letters to several family members, including Mother's mother and siblings.[3] There is no indication that the letters included any inquiries about Indian ancestry. Nor is there any indication that Indian ancestry was discussed at the Child Family Team Meeting, at which Minors, K.C. and V.E. were in attendance.

At the jurisdiction/disposition hearing, which was held on August 20, 2019, there was no discussion of ICWA. The court sustained the allegations

---

[3] The jurisdiction/deposition report is redacted, but it appears that by the date of the report the Agency had acquired a street address for Mother's mother, whose address had previously been listed as "Unknown, San Antonio, TX" on form ICWA-030.

in the petition.  The court adopted the Agency's dispositional findings and recommendations, and accordingly its order states that ICWA does not apply. Minors were placed in the care, custody and control of the Agency, and Mother was ordered to participate in reunification services.

Mother timely appealed.[4]

## DISCUSSION

A.    *Applicable Law and Standard of Review*

The applicable law is summarized in two recent cases, *In re D.S.* (2020) 46 Cal.App.5th 1041 (*D.S.*) and *In re Austin J.* (2020) 47 Cal.App.5th 870 (*Austin J.*):  "Congress enacted ICWA in 1978 to address concerns regarding the separation of Indian children from their tribes through adoption or foster care placement, usually in non-Indian homes.  [Citation.]  ICWA established minimum standards for state courts to follow before removing Indian children from their families and placing them in foster care or adoptive homes.  [Citations.]  In 2006, California adopted various procedural and substantive provisions of ICWA.  [Citation.]  In 2016, new federal regulations were adopted concerning ICWA compliance.  [Citation.]  Following the enactment of the federal regulations, California made conforming amendments to its statutes, including portions of the Welfare and Institutions Code related to ICWA notice and inquiry requirements. . . . [Citation.]  Those changes became effective January 1, 2019 [citation], and govern here.

---

[4] In connection with its reply brief on appeal, the Agency requested that we take judicial notice of orders made by the juvenile court in February 2020 terminating reunification services and finding that a section 366.26 hearing was not in the best interests of Minors.  We took the request, which Mother opposed, under submission for decision with the merits, and now deny it because the documents are irrelevant to the appeal.

"The new statute specifies the steps the Agency and the juvenile court are required to take in determining a child's possible status as an Indian child.  An 'Indian child' is defined in the same manner as under federal law, i.e., as 'any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe[.]'  (25 U.S.C. § 1903(4); accord . . . § 224.1, subd. (a) [adopting the federal definition].)  The Agency and the juvenile court have 'an affirmative and continuing duty' in every dependency proceeding to determine whether ICWA applies.  (. . . § 224.2, subd. (a) ['The duty to inquire [whether a child is or may be an Indian child] begins with the initial contact, including, but not limited to, asking the party reporting child abuse or neglect whether he or she has any information that the child may be an Indian child.']; Cal Rules of Court, rule 5.481(a); see [*In re*] *Isaiah W.* [2016] 1 Cal.5th [1,] 14 ['juvenile court has an affirmative and continuing duty in all dependency proceedings to inquire into a child's Indian status'].)

"Section 224.2, subdivision (b) specifies that once a child is placed into the temporary custody of a county welfare department, such as the Agency, the duty to inquire 'includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members,[5] others who have an interest in the child, and the party reporting child abuse or neglect,

---

[5] "Unless otherwise defined by the law or custom of the Indian child's tribe, the term 'extended family members' shall mean 'a person who has reached the age of eighteen and who is the Indian child's grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin, or stepparent.'  (25 U.S.C. § 1903(2); accord § 224.1, subd. (c) [adopting ICWA definition of extended family member].)"  (*D.S.*, *supra*, 46 Cal.App.5th at p. 1049, fn. 6.)

6

whether the child is, or may be, an Indian child.' " (*D.S.*, *supra*, 46 Cal.App.5th at pp. 1048-1049, fn. omitted.)

"California law also requires 'further inquiry regarding the possible Indian status of the child' when 'the court, social worker, or probation officer has reason to believe that an Indian child is involved in a proceeding.' (§ 224.2, subd. (e).) The Legislature, which added the 'reason to believe' threshold for making a further inquiry in 2018, did not define the phrase. When that threshold is reached, the requisite 'further inquiry' 'includes: (1) interviewing the parents and extended family members; (2) contacting the BIA and State Department of Social Services; and (3) contacting tribes the child may be affiliated with, and anyone else, that might have information regarding the child's membership of eligibility in a tribe.' [Citations.]

"In addition to the inquiry that is required in every dependency case from the outset and the 'further inquiry' required under California law when there is a 'reason to believe' an Indian child is involved, a third step—notice to Indian tribes—is required under ICWA and California law if and when 'the court knows or has reason to know that an Indian child is involved.' "[6] (*Austin J.*, *supra*, 47 Cal.App.5th at pp. 883-884.)

"The juvenile court may . . . make a finding that ICWA does *not* apply because the Agency's further inquiry and due diligence was 'proper and adequate' but no 'reason to know' whether the child is an Indian child was

_____

[6] The notice requirement, set forth in section 224.3, is triggered by a "reason to know" an Indian child is involved, and is distinct from the contact requirement that is part of the further inquiry requirement in section 224.2, subdivision (e), which is triggered by a "reason to believe." (*D.S.*, *supra*, 46 Cal.App.5th at p. 1049.) "Reason to believe" is not defined by statute. In contrast, section 224.2, subdivision (d) sets forth at some length the circumstances in which there is "reason to know" that an Indian child is involved. (*D.S.* at pp. 1049-1050.)

7

discovered.  (§ 224.2, subds. (i)(2), (g).)  Even if the court makes this finding, the Agency and the court have a continuing duty under ICWA and the court 'shall reverse its determination if it subsequently receives information providing reason to believe that the child is an Indian child and order the social worker or probation officer to conduct further inquiry.' (*Id.*, subd. (i)(2).)"  (*D.S., supra,* 46 Cal.App.5th at p. 1050.)

"On appeal, we review the juvenile court's ICWA findings for substantial evidence.  [Citations.]  But where the facts are undisputed, we independently determine whether ICWA's requirements have been satisfied." (*D.S., supra*, 46 Cal.App.5th at p. 1051.)

B.     *Analysis*

Mother argues that the Agency and juvenile court failed to comply with the inquiry and notice requirements of ICWA and that therefore we must remand for ICWA compliance.  We agree.

The record shows that the Agency asked Mother and Minors about Indian ancestry before the detention hearing, the juvenile court asked Mother about Indian ancestry at the detention hearing, and Mother and Minors responded that they may have Indian ancestry, but could not identify a tribe.  The only other inquiry into Minors' Indian ancestry that appears in the record was the Agency's July 3, 2019 contact with the BIA, which provided the names of Mother's parents, but not their addresses, and not the name of Mother's maternal grandmother, even though Mother had suggested that her maternal grandmother was the source of her information.  As the Agency concedes, there is no evidence that it contacted any of Minors' extended family about possible Indian ancestry, even though such inquiry was required by section 224.2, subdivision (b) once Minors were placed in the Agency's temporary custody at the detention hearing, and even though the

8

juvenile court had explained to Mother at the detention hearing that the Agency may want to speak with Mother's sister about possible Indian ancestry. Thus, there is nothing in the record to indicate that the *initial* inquiry requirements of ICWA were met, quite apart from requirements of further inquiry under section 224.2, subdivision (e) or notice under section 224.3. Accordingly, there is no evidence in the record, substantial or otherwise, to support the juvenile court's finding that ICWA does not apply, and we remand to the juvenile court, instructing it to direct the Agency "to conduct a meaningful investigation into [Mother's] claim of Indian ancestry." (*In re Michael V.* (2016) 3 Cal.App.5th 225, 236 (*Michael V.*).)

As Mother points out, when appellate courts remand matters with directions to comply with ICWA, they may conditionally affirm or conditionally reverse the juvenile court's orders. (See, e.g., *Michael V., supra*, 3 Cal.App.5th at p. 236 [conditionally affirming]; *In re Elizabeth W.* (2004) 120 Cal.App.4th 900, 909 [conditionally reversing].) In the circumstances before us, where Mother's parental rights have not been terminated and where ICWA compliance is the only challenge to the juvenile court's orders, we conditionally affirm. (*In re Veronica G.* (2007) 157 Cal.App.4th 179, 187 [concluding that reversal for failure to comply with ICWA is appropriate only where parental rights have been terminated].)

## DISPOSITION

The Agency's request for judicial notice is denied. The juvenile court's finding that ICWA does not apply is vacated. The case is remanded to the juvenile court to order the Agency to conduct an ICWA inquiry and provide sufficient information for the juvenile court to determine whether ICWA applies, and, if necessary following the inquiry and determination, to order ICWA notice and proceed in compliance with ICWA. If, after proper inquiry

9

and notice, no response is received from a tribe indicating that Minors are Indian children, the inapplicability finding shall be reinstated. If a tribe determines that Minors are Indian children, the juvenile court shall proceed in conformity with ICWA, and Minors, Mother, and the tribe may petition the court to invalidate any orders that violated ICWA. (See 25 U.S.C. § 1914.) In all other respects, the orders of the juvenile court are affirmed.

_____
Miller, J.

WE CONCUR:


_____
Kline, P.J.


_____
Stewart, J.




A158779, *Mendocino County Health and Human Services Agency v. S.E.*


11