Filed 9/28/20  In re B.M. CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| In re B.M., | B304289 |
| a Person Coming Under the Juvenile Court Law. | (Los Angeles County Super. Ct. No. 19CCJP07423) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | |
| Plaintiff and Respondent, | |
| v. | |
| SYLVIA B., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Martha A. Matthews, Judge.  Conditionally affirmed and remanded with directions.

Landon Villavaso, under appointment by the Court of Appeal, for Defendant and Appellant.

Mary C. Wickham, County Counsel, Kim Nemoy, Assistant County Counsel, and Tracey Dodds, Deputy County Counsel, for Plaintiff and Respondent.

_____

Sylvia B. (Mother) appeals from the juvenile court's January 13, 2020 jurisdictional and dispositional orders concerning her child, B.M.  Mother contends the juvenile court erred in entering the orders notwithstanding (1) the failure of the Los Angeles County Department of Children and Family Services (DCFS) to comply with the court's prior order to interview B.M.'s paternal aunt as to B.M.'s possible Indian heritage under the Indian Child Welfare Act (ICWA; 25 U.S.C. § 1901 et seq.) and its corresponding provisions under California law (see Welf. & Inst. Code, § 224 et seq.), and (2) the juvenile court's failure to first determine the applicability of ICWA.  Mother argues that we should conditionally reverse the dispositional order removing B.M. from her care and remand for DCFS and the court to comply with ICWA.

DCFS concedes the matter should be remanded so that a proper inquiry may be made into B.M.'s Indian heritage, but argues reversal of the orders is not warranted.  We agree.[1]

## FACTUAL AND PROCEDURAL BACKGROUND

We limit our recitation of the facts to those relevant to the ICWA issue on appeal.

_____

[1] Mother did not file an appellate reply brief.

2

In 2011, B.M. was born. In January 2014, a petition was filed alleging Mother was unable to provide regular care of B.M. due to substance abuse, and Antonio M. (Father) was unable to provide regular care for B.M. due to substance and alcohol abuse. Mother participated in substance abuse treatment. On June 27, 2014, the juvenile court dismissed the petition, and released B.M. into Mother's care.

On September 24, 2019, DCFS was advised of concerns relating to Mother's substance abuse and living conditions at Father's home.[2] DCFS initiated an investigation. On November 14, 2019, B.M. was detained and placed with her paternal cousin.

On November 18, 2019, DCFS filed a petition under Welfare and Institutions Code section 300 and a detention report. Both documents indicated that B.M. may have Indian ancestry. According to the report, during an October 30, 2019 interview with Mother, she stated that the paternal aunt, Linda, wanted to care for B.M. because "[B.M.] has Native American [a]ncestry and [paternal aunt] wants the child for financial gain." During a November 4, 2019 interview with Father, he stated that he tries "to remain connected to his '[s]piritual roots,' has tribal affiliation, and attends Pow Wows."

On November 19, 2019, Mother and Father filed forms with the juvenile court relating to B.M.'s status as an Indian child. On her form, Mother checked the box "I have no Indian ancestry as far as I know." Father's form includes a checked box that he "may have Indian ancestry" and a handwritten notation of "Yaqui; Arizona; Antonio M[.]"

---

[2] Mother and B.M. stayed at Father's home occasionally.

3

At the November 19, 2019 detention hearing, the juvenile court and Father discussed his Indian status:

"The Court: . . . Do you, sir, have a tribal membership number or card?

"The Father: No, ma'am.

"The Court: Is anyone in your family an actual member of an Indian tribe?

"The Father: We don't got no role number. I've been working on that, though. [¶] . . .

"[Father's Counsel]: My client does indicate that his family, his mother and father, were enrolled members, but they have both passed away.

"The Court: Okay. In your family—[DCFS] is going to need to have information like their names, their dates of birth, dates of death, place where they were born, things like that. Who is the person in your family who would know the most about that?

"The Father: Most likely would be my sister[, Linda]. She's present. [¶] . . .

"The Court: I'm going to order that [DCFS] interview paternal aunt, Linda, and any other knowledgeable paternal family members. And once [DCFS] has obtained all available information, [DCFS] is to provide notices as required by [ICWA]. This may actually be an [ICWA] case. And if so, we could later consider transferring it to the [ICWA] court. Let's get the information first."[3]

_____

[3] In its November 19, 2019 minute order, the juvenile court ordered DCFS "to contact the Father's side of the family for Indian heritage and investigate that claim. DCFS is ordered to notice the Indian tribes and the Bureau of Indian Affairs to

4

The juvenile court concluded that DCFS made a prima facie showing that B.M. came within the court's dependency jurisdiction, ordered temporary placement and custody be vested with DCFS pending disposition, and advised Mother and Father that they should be present at the jurisdictional and dispositional hearing, scheduled for January 13, 2020.

On December 30, 2019, DCFS filed a jurisdiction and disposition report. As to B.M.'s Indian status, DCFS reported: "On 11/19/19[,] the court found that it is believed the paternal relatives have possible Indian heritage. [¶] On 12/18/19[, dependency investigator] spoke with paternal cousin . . . who indicated that no one in the family is enrolled in any tribes but believes that there is Yawkey heritage in the family. [Paternal cousin] was unable to provide much information but indicated that she would contact her mother to obtain any information possible. However, it should be noted that the Yawkey [t]ribe is not federally recognized. It should also be noted that there is a 'Pascua Yaqui Tribe.' . . . Therefore, on 12/26/19[, dependency investigator] submitted a notice to the Pascua Yaqui Tribe. [¶] Please note that on 01/10/14[,] the court found that [ICWA] does not apply." (Bold omitted.) According to the same report, the investigator had a telephonic conference with Linda, the paternal aunt, and paternal cousin, together, that same day, December 18, 2019. The report does not disclose why DCFS did not pose questions relating to B.M.'s possible Indian heritage directly to paternal aunt.

_____

determine if this case falls within [ICWA]. DCFS is ordered to provide any notices and responses from the Indian tribe in the jurisdictional report for the next court date."

DCFS's December 26, 2019 notice to the Pascua Yaqui Indian Tribe included information for Father, Father's biological father, and Father's biological grandmother. For Father, the notice listed his name, birthdate, address, and tribe as Pascua Yaqui. For both Father's biological father and Father's biological grandmother, in the spaces provided for their names, the notice again stated Father's name: Antonio M[.] For Father's father, the notice also stated his birthdate, his tribe as Pascua Yaqui, and his former address and place of death as "East Los Angeles, CA." It did not state his place of birth or the date of his death. For Father's grandmother, the notice stated her former address and place of death as "Arizona" and her tribe as Pascua Yaqui. It did not state her birthdate, death date, or place of birth. According to the certificate of mailing, the notice was sent by registered or certified mail, return receipt requested.

Neither Mother nor Father attended the January 13, 2020 jurisdictional and dispositional hearing. The court sustained DCFS's Welfare and Institutions Code section 300 petition as to both parents and declared B.M. a dependent of the court. As to disposition, Mother's counsel stated, "Your honor, on behalf of . . . Mother, I don't have direction in terms of the case plan for . . . Mother, so I will be submitting to the court." The court ordered B.M. removed from the custody of both parents and placed in the care, custody and control of DCFS, and ordered DCFS to provide family reunification services to Mother and Father. During the hearing, the court noted that B.M. was currently living with her paternal cousin.

At the conclusion of the hearing, DCFS's counsel stated that notice relating to possible Indian ancestry was sent, but that DCFS did not receive any return receipts. Further, she stated

6

that there may be an error as to names provided in the notice, referred the court to Father's biological grandmother's purported name stated as Antonio [M.] as evidence of the possible error, and asked if DCFS could provide a progress report upon following up on this issue. The court responded that, as to Father's Indian heritage, "It seems legit . . . Father actually attends tribal events." The court ordered that DCFS continue to follow up and schedule a non-appearance progress review hearing regarding ICWA compliance for April 14, 2020.

On January 13, 2020, Mother filed a notice of appeal relating to the court's jurisdictional and dispositional orders.

On March 24, 2020, the juvenile court continued the April 14, 2020 non-appearance progress report hearing to May 20, 2020 due to COVID-19. The juvenile court's docket indicates that the May 20, 2020 progress report hearing was also cancelled, presumably again due to COVID-19.

On July 29, 2020, DCFS filed its report in advance of the six-month review hearing scheduled for September 14, 2020.[4] As to B.M.'s status as an Indian child, the report states that "[o]n 01/10/2014, the [c]ourt found that [ICWA] does not apply as to [B.M.]"

## DISCUSSION

Mother argues that DCFS failed to interview paternal aunt to obtain information concerning Father's Indian heritage. She further argues the juvenile court erred in issuing the

---

[4] This hearing was also continued to September 14, 2020 due to COVID-19. According to a September 14, 2019 minute order, the juvenile court again continued the matter to October 19, 2020.

7

dispositional order without first determining whether ICWA applied and providing the tribe an opportunity to intervene if necessary. Specifically, she contends B.M.'s placement with paternal cousin is "foster care placement" under ICWA and that ICWA imposes a heightened evidentiary standard if a child is to be placed in foster care.[5] Thus, she argues, the dispositional order must be conditionally reversed to allow the Indian tribe to intervene and the matter should be remanded to allow an adequate inquiry to be made.

DCFS does not dispute "it failed to make an adequate inquiry" and that the matter "needs to be remanded so that proper inquiry is made, and then, if there is a reason to know the child may be an Indian child, ICWA notices sent." Accordingly, we limit our opinion to the issue of whether the jurisdictional and dispositional orders must be reversed.

When an Indian child is involved, both ICWA and Welfare and Institutions Code section 224.3 require notice to the Indian tribe before a foster care placement or termination of parental rights proceeding may take place. (25 U.S.C. § 1912, subd. (a); Welf. & Inst. Code, § 224.3, subd. (a).)

However, courts have held that failure to comply with ICWA requirements is not a jurisdictional error, and does not require the reversal of a juvenile court dispositional order. (*In re Brooke C.* (2005) 127 Cal.App.4th 377, 385 ["the only order which

---

[5] Although Mother does not state so explicitly, her arguments suggest the dispositional order was erroneous because ICWA provides that "No foster care placement or termination of parental rights proceeding shall be held until at least ten days after receipt of notice by the parent or Indian custodian and the tribe or the Secretary . . . ." (25 U.S.C. § 1912, subd. (a).)

would be subject to reversal for failure to give [ICWA] notice would be an order terminating parental rights"]; accord, *In re Veronica G.* (2007) 157 Cal.App.4th 179, 187 [holding jurisdictional and dispositional orders did not warrant reversal for failure to comply with ICWA].)  Rather, the proper remedy is to conditionally affirm the dispositional order and remand for the limited purpose of ICWA compliance.  (See *In re Kadence P.* (2015) 241 Cal.App.4th 1376, 1379; *In re Veronica G., supra*, at p. 188; *In re Brooke C., supra*, at p. 386.)

## DISPOSITION

The juvenile court's jurisdictional and dispositional orders are conditionally affirmed, and the matter is remanded to the juvenile court for the limited purpose of ICWA compliance.  If the court thereafter determines that B.M. is an Indian child and the ICWA applies to these proceedings, the court is to vacate the current order and proceed accordingly.

NOT TO BE PUBLISHED

SINANIAN, J.*

We concur:

ROTHSCHILD, P. J.          BENDIX, J.

---

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.