Filed 6/24/24 In re N.B. CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re N.B. et al., Persons Coming Under the Juvenile Court Law. | |
| ALAMEDA COUNTY SOCIAL SERVICES AGENCY, Plaintiff and Respondent, v. E.S., Defendant and Appellant. | A168848 (Alameda County Super. Ct. No. JD036301-01, JD036304-01) |

In this appeal, E.S. (Mother) challenges jurisdiction and disposition orders issued by the juvenile court in dependency proceedings brought by the Alameda County Social Services Agency (Agency) on behalf of her children N.B. and J.B.[1]  The sole issue before us is whether the juvenile court erred in finding that the Agency complied with its duty of initial inquiry under the Indian Child Welfare Act (25 U.S.C. § 1901 et seq., ICWA) and related

---

[1] We refer to N.B. and J.B. collectively as Minors.  N.B. is the subject of superior court case number JD036301-01, and J.B. is the subject of case number JD036304-01.

1

California law.  (Welf. & Inst. Code, § 224 et seq.)[2]  We conclude that the court's finding cannot stand, and therefore we will vacate the court's finding that ICWA does not apply and remand the matter for compliance with ICWA, but otherwise affirm the challenged orders.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.   *Family Background*

In 2019, after the parental rights of their biological mother and father were terminated in a dependency proceeding, N.B. and J.B. were adopted by Mother, who was their maternal aunt.[3]  At that time, N.B. was five years old and J.B. was four.

### B.   *Petition and Detention*

Mother and Minors came to the attention of the Agency in June 2023, when Minors were detained by law enforcement after attempting to run away from home.  Minors told the responding officers that Mother physically abused them.  On June 6, 2023, the Agency filed a petition under section 300, subdivisions (b)(1) and (c), alleging that Minors were at substantial risk of suffering serious physical harm as a result of Mother's using excessive corporal discipline and that they were at substantial risk of suffering serious emotional damage as a result of Mother's parenting, which included abusive language and threats.[4]

The petition stated that on June 3 Mother had been questioned about Minors' Indian status, and that the inquiry gave the social worker no reason

---

[2] All unspecified statutory references are to the Welfare and Institutions Code.

[3] The record indicates that Mother adopted the children "singly," so there is no other adoptive parent.

[4] All subsequent dates are in 2023 unless otherwise stated.

to believe Minors were or may be Indian children.  In its detention report, the Agency stated that on June 3, Mother had informed a social worker "that there is no Native American ancestry in their family."

At the detention hearing, held on June 7, the court asked Mother whether she had any Indian ancestry and Mother responded, "no."  The court also asked Mother whether she knew if there was any Indian ancestry on the biological father's side of the family.  Mother responded, "no."  The court then stated, "So . . .,  we know that at least on the maternal side of the family there's no ICWA"; asked Mother's counsel to have Mother complete a Judicial Council form ICWA-20 form ("Parental Notification of Indian Status"); and stated "[W]e don't know yet about dad, so we won't make a finding."  The court ordered Minors detained and set a jurisdiction and disposition hearing.

C.    *Jurisdiction and Disposition*

In its jurisdiction/disposition report, the Agency recommended that the court find the allegations of the petition true, that Minors remain in out-of-home care, and that reunification services be ordered for Mother.  As to the application of ICWA, the report is identical to the detention report, stating that on June 3, Mother informed a social worker "that there is no Native American ancestry in their family."  The Agency recommended the court find that Minors are not Indian children and that no further notice under ICWA is required, based on Mother's June 3 statement.

The report noted that Minors "have maternal and paternal relatives who are concerned for their welfare," and named several biological relatives of Minors in addition to Mother:  their biological mother; their biological father; an adult sister, described as "Maternal bio sib"; a biological maternal aunt; a biological paternal aunt; and Minors' paternal grandmother.  The Agency had been in contact with the paternal aunt and paternal

3

grandmother, who were being considered as possible placements for Minors. Nothing in the report indicated that the Agency had inquired of any of those relatives as to whether Minors had Indian ancestry.

A contested jurisdiction and disposition hearing was conducted over two days, on September 6 and 25. At the conclusion of the hearing, the court found true the allegations of the petition, as amended to correct the date on which certain events occurred. As recommended by the Agency, the court found that ICWA did not apply based on Mother's June 3 statement; ordered that Minors remain in out-of-home care; and ordered reunification services.

This appeal followed.

## DISCUSSION

### A. *Applicable Law and Standard of Review*

ICWA, which "giv[es] Indian tribes concurrent jurisdiction over state court child custody proceedings that involve Indian children living off of a reservation" (*In re W.B.* (2012) 55 Cal.4th 30, 48), was enacted "in response to 'rising concern . . . over the consequences to Indian children, Indian families, and Indian tribes of abusive child welfare practices that resulted in the separation of large numbers of Indian children from their families and tribes through adoption or foster care placement, usually in non-Indian homes.' " (*In re Isaiah W.* (2016) 1 Cal.5th 1, 7.)

ICWA "establishes minimum federal standards a state court must follow when removing an Indian child from his or her family"; "[i]n any given case, ICWA applies or not depending on whether the child who is the subject of the custody proceeding is an Indian child." (*In re Abbigail A.* (2016) 1 Cal.5th 83, 88, 90.) Under both federal and California law, an "Indian child" is one who is either (a) a member of a federally recognized Indian tribe or (b) eligible for membership in a federally recognized tribe and the biological child

4

of a member of a federally recognized tribe.  (25 U.S.C. § 1903(4) & (8); § 224.1, subds. (a) & (b).)

"Because it typically is not self-evident whether a child is an Indian child, both federal and state law mandate certain inquiries to be made in each case.  These requirements are sometimes collectively referred to as the duty of initial inquiry." (*In re Benjamin M.* (2021) 70 Cal.App.5th 735, 741 (*Benjamin M.*).)  Under California law, juvenile courts and social service agencies "have an affirmative and continuing duty to inquire whether a child [in a dependency proceeding] is or may be an Indian child."  (§ 224.2, subd. (a).)  This duty "begins with the initial contact, including, but not limited to, asking the party reporting child abuse or neglect whether the party has any information that the child may be an Indian child."  (*Ibid.*)  "When the agency takes the child into temporary custody, its duty to inquire 'includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members,[5] others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child.' (§ 224.2, subd. (b).)  State law also expressly requires the juvenile court to ask participants who appear before the court about the child's potential Indian status.  (§ 224.2, subd. (c).)"[6]  (*Benjamin M., supra,* 70 Cal.App.5th at p. 742.)

---

[5] The term "extended family member" is defined by the law or custom of the Indian child's tribe, or, absent such law or custom, as "a person who has reached the age of eighteen and who is the Indian child's grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin, or stepparent."  (25 U.S.C. § 1903(2); see § 224.1, subd. (c) [adopting federal definition].)

[6] "If the initial inquiry gives the juvenile court or the agency 'reason to believe' that an Indian child is involved, then the juvenile court and the agency have a duty to conduct " 'further inquiry' [citation], and if the court or

If the juvenile court finds that the county welfare department has complied with its duty of inquiry *and* that there is no reason to know that the child is an Indian child, the court may find that ICWA does not apply to the proceedings. (§ 224.2, subd. (i)(2).) Thus, a finding by the juvenile court that ICWA does not apply entails a finding that the department complied with its duty of inquiry.

California's appellate courts are divided as to the appropriate legal standard to evaluate whether ICWA inquiry errors are prejudicial, and therefore require a conditional affirmance or reversal of the trial court's orders. (See *In re K.H.* (2022) 84 Cal.App.5th 566, 608-618 [discussing the various standards].) Determination of the proper standard is now before our Supreme Court. (*In re Dezi C.* (2022) 79 Cal.App.5th 769, review granted Sept. 21, 2022, S275578.) While we await a determination of the issue, we follow the approach we took in *In re V.C.* (2023) 95 Cal.App.5th 251 (*V.C.*), "adopt[ing] the standard of *Benjamin M.*: A finding that ICWA does not apply cannot stand 'where the record demonstrates that the agency has not only failed in its duty of initial inquiry, but where the record indicates that there was readily obtainable information that was likely to bear meaningfully upon whether the child is an Indian child.' (*Benjamin M., supra*, 70 Cal.App.5th at p. 744.)" (*V.C., supra*, 95 Cal.App.5th at p. 262.)

B.    *Analysis*

Mother argues that the Agency failed to comply with its duty of initial inquiry because it did not ask Minor's identified maternal biological relatives (other than Mother) about Minor's potential Indian ancestry, and because it

the agency has 'reason to know' an Indian child is involved, ICWA notices must be sent to the relevant tribes. [Citations.]" (*Benjamin M., supra*, 70 Cal.App.5th at p. 742.) This appeal concerns only the duty of initial inquiry.

6

did not ask any of Minor's identified paternal biological relatives about Minors' potential Indian ancestry. Mother contends that these extended family members were "identified and readily available" and that the Agency's failure to make inquiry of them is prejudicial because those individuals possessed information "likely to bear meaningfully upon whether" Minors were Indian children. (*Benjamin M.*, *supra*, 70 Cal.App.5th at p. 744.) Her argument is well-taken.

The record reveals that the Agency was aware of numerous extended family members who may have had information about Minors' potential Indian ancestry: Minors' biological mother; their biological father, who was in contact with Mother and who had reportedly told Minors that he wants them to live with him; Minors' adult sister, who was in contact with Minors and with Minors' biological father; a biological maternal aunt, whom Mother identified as part of her support network; a biological paternal aunt, who was being assessed for placement at Mother's request and who, according to Mother, lived across the street from Minor's biological mother and near their biological father; and Minor's paternal grandmother, whom Mother suggested as a placement for Minors and who informed the Agency she was willing and able to be assessed for possible placement. Although the Agency had contacted Minors' paternal aunt and paternal grandmother, there is no indication that the Agency asked them about Minors' Indian ancestry. Nor is there any indication that the Agency made any attempt to contact any of Minors' other identified relatives. The record here " 'indicates that there was readily obtainable information that was likely to bear meaningfully upon whether' " Minors were Indian children (*V.C.*, *supra*, 95 Cal.App.5th at p. 262), and therefore the juvenile court's finding that ICWA does not apply cannot stand.

The Agency argues that because Minors have been adopted, their biological parents do not constitute extended family members, and therefore any relatives of the biological parents who are not also relatives of Mother are not extended family members.  The argument lacks merit.  It relies on *D.S. v. Superior Court* (2023) 88 Cal.App.5th 383, 391, which holds that extended family members who are related to minors by adoption must be included in an agency's duty of initial inquiry.  Nothing in *D.S.* suggests that the Agency's duty to make inquiry of adoptive extended family members in any way relieves the Agency of its duty to make inquiry of available *biological* extended family members.  (See also *In re Y.W.* (2021) 70 Cal.App.5th 542, 553 [department failed to satisfy duty of inquiry by making no "meaningful efforts to locate and interview" biological parents of Mother (who was adopted), for whom contact information was available]; 25 U.S.C. § 1903(4) [defining "Indian child" with reference to biological parents]; § 224.3, subd. (a)(5)(C) [ICWA notice must include "[a]ll names known of the Indian child's *biological* parents, grandparents, and great-grandparents . . . as well as their current and former addresses . . . if known" (italics added)].)

The Agency also argues that there can be no duty to make inquiry of Minors' paternal aunt and paternal grandmother because the Agency would be required to obtain a court order to procure their contact information, in view of the fact that Minors have been adopted and any documents in the adoption proceeding have been sealed.  No such steps are required here.  Not only did the Agency have contact information for paternal aunt and paternal grandmother; it had in fact been in contact with them.  This is not a case where the agency is being "required to 'cast about' for information or pursue unproductive investigative leads" (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1053), nor a case where the Agency lacked information from Mother about

8

Minor's family, or where any of the identified individuals were deceased, or where anyone refused to provide information to the Agency. (*In re A.M.* (2020) 47 Cal.App.5th 303, 323.)

Finally, the Agency asserts that "Mother's relationship with [Minors] as their maternal aunt provides her with privity to children's familial ancestry due to her proximity to the children's relatives through her biological relationship with them," and that once Mother denied having Indian ancestry, the Agency had fulfilled its duty. We disregard this assertion, which is unsupported by any citation to authority, and relies on vague and undefined terminology.

In sum, we conclude that the juvenile court's finding that ICWA does not apply must be vacated and the matter must be remanded. When appellate courts remand matters with directions to comply with ICWA they may conditionally affirm or conditionally reverse the juvenile court's orders. (See, e.g., *In re H.V.* (2022) 75 Cal.App.5th 433, 438 [conditionally affirming]; *V.C.*, *supra*, 95 Cal.App.5th at p. 263 [conditionally reversing].)[7] In the circumstances here, where Mother's parental rights have not been terminated and where ICWA compliance is the only challenge to the juvenile court's orders, we conditionally affirm. (See *In re Veronica G.* (2007) 157 Cal.App.4th 179, 187 [concluding that reversal for failure to comply with ICWA is appropriate only where parental rights have been terminated].)

---

[7] There is a third possibility: in an appeal from a dispositional order where the only challenge is to compliance with ICWA inquiry requirements, and where the social services agency concedes that it did not satisfy its inquiry obligations under ICWA and accepts its obligation to do so, the reviewing court may simply affirm the challenged order. (*In re S.H.* (2022) 82 Cal.App.5th 166, 170-171.) In this case, however, the Agency makes no concession concerning its inquiry obligations.

## DISPOSITION

The juvenile court's orders are affirmed except that the juvenile court's finding that ICWA does not apply is vacated. The case is remanded with directions for the juvenile court to order the Agency to comply with the duty of initial ICWA inquiry (§ 224.2, subd. (b)), and any further duties imposed by ICWA and related California law. If the court then determines that ICWA does not apply, the court shall reinstate its inapplicability finding. If the court finds that ICWA applies, the court shall proceed in conformity with ICWA and related California law; and Minors, Mother and the tribe(s) may petition the court to invalidate any orders that violated ICWA. (25 U.S.C. § 1914.)

_____
Miller, J.

WE CONCUR:


_____
Stewart, P.J.


_____
Desautels, J.


A168848, *Alameda County Social Services Agency v. E.S.*